Mary FLAHERTY, Plaintiff–Appellant,

v.

METROMAIL CORPORATION, Experian Corporation, Experian Information Solutions, Inc., and Experian Holdings, Inc., as successors in interest to Metromail Corporation, Defendants–Appellees.

Docket No. 01–9003.

United States Court of Appeals, Second Circuit.

July 9, 2002.

Steven J. Hyman, McLaughlin & Stern, New York, NY, for Appellant.

Robert N. Holtzman, Kramer Levin Naftalis & Frankel, New York, NY, for Appellees.

Present: CALABRESI, SACK, and B.D. PARKER, Jr. Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION, it is ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be and it hereby is AFFIRMED.

Plaintiff-appellant Mary Flaherty appeals from a judgment of the United States District Court for the Southern Dis-

trict of New York (Buchwald, J.) granting defendants' motion for summary judgment in her action alleging constructive discharge. Flaherty filed this suit against her former employer, Metromail Corporation ("Metromail"), and its alleged successors in interest, Experian Corporation, Experian Information Solutions, Inc., and Experian Holdings, Inc., asserting age and "gender plus age" discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the New York State Executive Law, and the New York City Human Rights Law.

Flaherty worked for Metromail, a direct marketing company, from 1977 until her resignation on November 1, 1997. She was 59 years old when she left the company. Sometime in 1982 she was promoted to the position of account sales executive in Metromail's East Coast Sales Office. In her complaint, Flaherty alleged that from 1993 until the end of 1996, her various supervisors engaged in a series of actions which indicated that she would be terminated for discriminatory reasons. These actions included making discriminatory comments about her, transferring accounts away from her, and denying her adequate supervisory support. Although each of these supervisors had left by early 1997, Flaherty further asserts that the discriminatory treatment continued in 1997 under her new supervisor, James Kaiser.

Flaherty concedes that Kaiser never engaged in any expressly discriminatory conduct. She contends, however, that his decision to assign a lucrative account to another sales representative, his alleged unwillingness to provide her with supervisory support, and his decision to continue enforcing the company's new accountabili-ty procedures evidenced Kaiser's intention to create such intolerable work conditions that Flaherty would be compelled to leave. Based upon this belief, Flaherty informed Kaiser on May 15, 1997 that she was thinking about retirement and asked him to look into a retirement package, including health benefits. She requested that she be permitted to retire on July 1, 1997. (This would allow her time to transition her accounts.) Kaiser responded to Flaherty on June 15, 1997, explaining that she would have to take her accrued month of vacation time before the effective date of her retirement, and also provide three months notice before retiring in order to qualify for benefits. By a memorandum dated June 12, 1997,[1] Flaherty submitted her formal retirement, effective November 1, 1997.

On December 4, 1998, Flaherty filed the present action. The district court granted summary judgment for defendants on the grounds that Flaherty failed to establish that she was constructively discharged and that Flaherty was unable to rebut Metromail's proffer of credible non-discriminatory reasons for Kaiser's actions and for the other events that Flaherty had proffered in support of her constructive discharge claim. *Flaherty v. Metromail Corp.*, 86 Fair Empl. Prac. Cas. (BNA) 984, 2001 WL 868011 (S.D.N.Y. July 31, 2001). The lower court reasoned that the plaintiff did not offer sufficient evidence that her working conditions were so intolerable that a reasonable person in her shoes would have felt compelled to resign.

The court found, first, that her lengthy voluntary post-notice employment belied this contention. The court did not credit her explanation that the delay was caused by the requirement that she take her vaca-

---

1. It is not clear in the record why the letter is dated June 12, 1997 when the conversation with Kaiser did not occur until June 15, 1997.

tion and give ninety days notice in order to preserve her retirement benefits. Second, the incidents Flaherty cited as evidence of intolerable working conditions were, according to the court, insufficient to demonstrate that a reasonable person would have felt compelled to retire. The court found that Flaherty based her claim, in large part, upon conduct which occurred years earlier and which involved people who were no longer supervising her at the time of her retirement. The court noted that a resignation does not qualify as a constructive discharge if it is the consequence of past discrimination, and, therefore, that evidence of contemporaneous intolerable conditions is necessary to state such a claim. Finally, Flaherty failed to offer facts showing that Kaiser acted with the deliberation required to establish constructive discharge.

On appeal, Flaherty argues that the district court improperly applied the standard for summary judgment. We review a district court's grant of summary motion *de novo*. *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 167 (2d Cir.2001). A motion for summary judgment may not properly be granted unless "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

To establish a prima facie case for unlawful termination of employment under the ADEA or Title VII, an employee must show: (1) that she was qualified for the job, (2) that she was within the protected group, (3) that she was either actually or constructively discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age or gender discrimination. *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 359 (2d Cir.1993), *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994). A claim for constructive discharge exists when "an employer, rather than directly discharging an individ-

ual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir.1996) (internal quotation marks and citation omitted); *see Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir.2000).

■ We reject the district court's reference to Flaherty's continuing to work for several months after giving notice of resignation as sufficient evidence that her working conditions were tolerable and, hence, that summary judgment against her was justified. Flaherty presented enough evidence to raise a jury question as to whether or not she was aware that Metromail's personnel policies, in fact, only required two months notice before retirement in order to qualify for retirement benefits. Flaherty asserts that she delayed the date of her retirement based upon the information she received from Kaiser concerning Metromail's retirement policies. And if her assertion is accepted, as it must be on a motion for summary judgment, her remaining until November 1, 1997 constitutes no real evidence against her. An employee may find conditions unbearable when no relief is in sight, and yet be able to put up with the same conditions when she knows that freedom (through resignation) is at hand. This is especially so when the employee believes that bearing the intolerable situation for a limited period is essential to qualify for needed benefits.

■ The question remains, however, whether Flaherty's work environment at the time of her resignation was sufficient evidence to give rise to a *prima facie* case

of constructive discharge. We affirm the dismissal of her complaint on the ground that she fails to raise a disputed issue of material fact regarding the presence of objectively intolerable working conditions deliberately created by her employer at the time of her resignation. Flaherty conceded that, to her knowledge, Kaiser had never made a discriminatory remark to or about her. And the conduct that Flaherty proffers as evidence of Kaiser's deliberate efforts to compel her to resign is inadequate to establish a *prima facie* case that her work environment was intolerable and that Kaiser was engaged in intentional efforts to compel her to resign. Any past discrimination she allegedly experienced under her earlier supervisors is not, in the particular circumstances of this case, sufficiently linked to working conditions under Kaiser to support a constructive discharge claim, since the earlier supervisors had left the company and no longer dealt either with the plaintiff or with Kaiser.

Having reviewed all of plaintiff's remaining arguments and finding them to be without merit, we AFFIRM the judgment of the district court.[2]

---

2. In view of our affirmance of the district court's treatment of plaintiff's federal claims and the district court's failure to discuss her state claims, these latter should be treated as dismissed without prejudice. *See Baylis v.* *Marriott Corp.,* 843 F.2d 658, 665 (2d Cir. 1988) ("When all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court should ordinarily dismiss the state claims.").