Mary **FLAHERTY**, Plaintiff,

v.

**METROMAIL CORPORATION** now known as **Experian Marketing Solutions, Inc. and Experian Marketing Solutions, Inc. as successor in interest to Metromail Corporation**, Defendants.

**No. 03 Civ. 0435(NRB).**

United States District Court, S.D. New York.

Nov. 6, 2003.

Janet C. Neschis, Steven J. Hyman, McLaughlin & Stern, LLP, New York City, Counsel for Plaintiff.

Robert N. Holtzman, Steven M. Knecht, Kramer, Levin, Naftalis & Frankel LLP, New York City, Counsel for Defendant.

## ORDER

BUCHWALD, District Judge.

Plaintiff Mary Flaherty ("plaintiff") brought this action against her former employer, Metromail Corporation ("Metromail"), and its alleged successor in interest, Experian Marketing Solutions, Inc. (collectively, "defendants"), in the Supreme Court of New York in New York County, asserting gender and age discrimination in violation of the New York State Human Rights Law and New York City Human Rights Law. Defendants removed the action. Now pending is defendants' motion, pursuant to *Fed.R.Civ.P. 56*, for summary judgment on the following grounds: that certain of plaintiff's claims are barred by collateral estoppel; that others are barred by applicable statutes of limitations; and that plaintiff has failed to raise a genuine issue of material fact to be tried. For the reasons set forth below, defendants' motion is granted in part and denied in part.

Because this is the fifth opinion issued in this case, we do not reiterate the basic facts and assume familiarity with them. *See Flaherty v. Metromail Corp.*, 59 Fed. Appx. 352 (2d Cir.2002) [hereinafter *Flaherty 2002*]; No. 98 Civ. 8611, 2001 WL 868011 (S.D.N.Y. July 31, 2001)(Buchwald, J.) [hereinafter *Flaherty 2001*]; 235 F.3d 133 (2d Cir.2000); No. 98 Civ. 8611, 2000 WL 288356 (S.D.N.Y. March 16, 2000)(Buchwald, J.).

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56(c)*. In reviewing the record, we must assess the evidence in "the light most favorable to the nonmoving party" and resolve all ambiguities and "draw all reasonable inferences" in its favor. *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir.1993); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the same time, "[c]onclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Manufacturing*, 156 F.3d 396, 400 (2d Cir.1998).

We discuss each of defendants' grounds for summary judgment in turn.

## DISCUSSION

### A. Collateral Estoppel

■ Collateral estoppel bars litigation of any issue that was: 1) raised in a previous proceeding; 2) litigated and decided in that proceeding; 3) decided after the estopped party had a full and fair opportunity to litigate it; 4) and "necessary to support a valid and final judgment on the merits." *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir.1995). Defendants submit that our earlier opinion granting them summary judgment on the issue of plaintiff's constructive discharge claim, *Flaherty 2001*, bars all of plaintiff's claims related to the assignment of the Doubleday account, the warning letter she received, and the refusal of her supervisor, Cardonsky, to meet with her clients.

Defendants argue, essentially, that because our earlier opinion credited the nondiscriminatory reasons they asserted for the acts on which plaintiff based her constructive discharge claim, plaintiff is barred from challenging these assertions in her present action. Defs.' Mot. at 9. However, along with the language defendants cite, we provided several other grounds for our decision. Most importantly, we concluded that defendants' alleged activities, whether discriminatory or not, did not rise to the level of constructive discharge, *i.e.*, did not create an intolerable environment. *Flaherty 2001.* Any doubts as to which grounds were "necessary" to our previous grant of summary judgment should have been dispelled by the Second Circuit's opinion affirming our decision on the sole ground that, regardless of defendants' motives, plaintiff had failed to raise a disputed issue of material fact as to whether her working conditions were intolerable at the time she left, *i.e.*, under her most recent supervisor, Kaiser. *Flaherty*, 59 Fed.Appx. 352, 354–55 (2d Cir.2002).

Thus, because any language in our earlier opinion concerning whether or not defendants' actions were discriminatory was not essential to our holding, particularly as it was affirmed by the Second Circuit, it does not have the collateral estoppel effect defendants seek.

### B. Statute of limitations

■ Defendants also argue that certain of plaintiff's claims are barred by the three-year statute of limitations. N.Y. C.P.L.R. 214(2) (McKinney 1990); N.Y.C. Admin. Code § 8–502(d) (1993). Specifically, defendants argue that any claims based on conduct prior to December 4, 1995 are barred. These claims include those based on the accounts that were taken away from plaintiff in the early 1990s and defendants' decision, in redistributing the accounts of a former employee, Larry Rozinsky, not to assign any of these accounts to plaintiff. Defs.' Mot. at 10–11.

Plaintiff counters that these claims are admissible as integral parts of a continuous violation that includes acts within the statute of limitations. Pl.'s Opp'n at 18. Surprisingly, plaintiff does not even mention, much less offer an argument for distinguishing, the Supreme Court's obviously pertinent opinion last year in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In that case, the Court considered the Ninth Circuit's view that conduct falling outside the statute of limitations was nonetheless actionable if it was either related to conduct within the statute of limitations or part of a " 'systematic policy or practice' " extending into the statute. *Id.* at 107, 122 S.Ct. 2061 (citation omitted). The Supreme Court rejected the lower court's approach and held that "discrete discriminatory acts are not actionable if

time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113, 122 S.Ct. 2061.

Given that *Morgan* involved allegations of consistent harassment, *id.* at 105, 122 S.Ct. 2061, we fail to see how the various allegedly discriminatory employment decisions at issue here would be distinguishable as being any less discrete. *See Gross v. National Broadcasting Co.*, 232 F.Supp.2d 58, 68 (S.D.N.Y.2002) ("[A]lleged failures to compensate adequately, transfers, job assignments and promotions cannot form the basis for a continuing violation claim."). We therefore find that, while defendants' conduct prior to December 4, 1995 may be admissible as background, *see Morgan*, 536 U.S. at 113, 122 S.Ct. 2061, it cannot be an independent basis for any of her claims.

### C. Genuine Issues of Material Fact[1]

■■ Defendants also move for summary judgment on the ground that plaintiff has failed to raise a genuine issue of material fact as to whether or not she suffered discrimination. To establish a prima facie case of discrimination sufficient to shift the burden of production to the defendant, a plaintiff must show: "membership in a protected class, qualifi-cation for the position, an adverse employment action, and circumstances giving at least minimal support to an inference of discrimination." *Fagan v. New York State Electric & Gas Corp.*, 186 F.3d 127, 132 (2d Cir.1999). Plaintiff alleges the following: that defendants refused to assign her new accounts; that they refused her supervisory support that was important to her maintaining optimal relations with her clients and attracting new business; that they interfered with "lettershop" business she had secured by directing the lettershop department to turn her orders away; and that two similarly situated employees were promoted while she was not. Pl.'s Opp'n at 16–23.[2]

Defendants argue that summary judgment is warranted because all of these acts either do not constitute discrimination as a matter of law or are not accompanied by sufficient evidence for a reasonable factfinder to conclude that they were motivated by plaintiff's age or gender. Defendants point out that they have put forward non-discriminatory reasons for each of the challenged actions and submit that these reasons should be sufficient to rebut any prima facie case of discrimination. As for the alleged discriminatory comments made by plaintiff's supervisor, Sam Cardonsky, and the Senior Vice President in charge of

---

1. Because we find that plaintiff is barred from making claims based on conduct occurring prior to December 4, 1995, *see supra* Section B, our discussion in this section is confined to defendants' conduct after that date.

2. We agree with defendants that plaintiff's allegation that defendants promoted two of plaintiff's co-workers, Thomas Kackmarek and Cary Zackman, cannot support a claim of discrimination because these promotions occurred after plaintiff's retirement and, according to the undisputed testimony of plaintiff's last supervisor, Kaiser, after Kaiser had left as well. Kaiser Dep. at 219, 237, 249–51.

   Plaintiff also alleges in her amended complaint that defendants wrongfully issued her a warning letter based on the discrepancy be-tween her sales projection and her actual sales, wrongfully encouraged her to agree to a lesser position in another department, and wrongfully promised her accounts to other executives. Compl. at ¶¶ 30–35. However, these allegations are not included in plaintiff's opposition brief, and we therefore assume she has abandoned them. In any event, we note that, although these actions may be admissible as evidence of animus, none of them would constitute an "adverse employment action," which the law defines as a " 'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000) (citation omitted).

her group, Mike Reynolds, defendants argue that they were mere "stray comments" and thus, absent a demonstrated connection to an adverse employment action, are not actionable.

Plaintiff counters that the acts she alleges were materially adverse in that they affected her ability to make commissions. Plaintiff also argues that the discriminatory comments allegedly made by Reynolds and Cardonsky, far from being stray comments, are direct evidence of discriminatory animus sufficient to establish a genuine issue of material fact. On the issue of what force defendants' explanations carry, plaintiff cites law that, once the plaintiff has established a prima facie case of discrimination, a defense motion for summary judgment is defeated "unless the employer has come forward with evidence of a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir.1995).[3]

The parties dispute whether this case falls under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in which the plaintiff bears the burden of proof throughout the case, or under the framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), in which, once a plaintiff has met her burden of proving that an impermissible classification "played a motivating part in an employment decision," *id.* at 244–45, 109 S.Ct.

1775, the burden shifts to the defendant to prove that it would have made the same decision regardless of any discriminatory motives. We do not reach this issue, as it would be inappropriate to do so on a summary judgment motion. Whether plaintiff has established an impermissible motivation by a preponderance of the evidence is a question of fact. *See Ostrowski v. Atlantic Mutual Ins. Cos.*, 968 F.2d 171, 182–83 (2d Cir.1992). Instead, we focus on the question of whether plaintiff has raised a genuine issue of material fact as to whether discrimination played a role in the way she was treated.

We find it helpful, at the outset, to divide defendants' conduct temporally into that occurring during Reynolds' tenure, which overlapped with Cardonsky's, and that occurring after Reynolds left and Kaiser replaced Cardonsky. For the reasons set forth below, we deny defendants' summary judgment motion with respect to the former and grant their motion with respect to the latter.

We find that plaintiff has provided sufficient evidence of discriminatory animus on the part of both Reynolds and Cardonsky to create a genuine issue of material fact as to whether adverse employment actions taken during their tenure were discriminatory. Plaintiff testified that her supervisor Hurwitz told her that Reynolds told Hurwitz that plaintiff was "old and grandmotherly and at the end of [her] career," and told Hurwitz to fire plaintiff. Flaherty Dep. at 42.[4] One of plaintiff's co-workers

---

**3.** We note that our inquiry into the record facts has been somewhat complicated by plaintiff's citation to inaccurate pages in the deposition record to support her various factual assertions.

**4.** Hurwitz has denied having had this conversation, and defendants argue that the conversation is inadmissible double hearsay. Defs.' Mot, at 22–23. However, we find that Reyn-

olds statement to Hurwitz clearly fits within Fed.R.Evid. 801(d)(2)(D), which exempts from the hearsay definition any "statement by a party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," and we moreover find that, contrary to defendant's position, Hurwitz's statement fits within the same exemption.

testified that Cardonsky, in the context of discussing his plans for the future, "made a comment about when we get rid of the old bag and he was referencing [plaintiff]." Dikdan Dep. at 43–44. Another co-worker testified that, in a conversation about her promotion prospects, Cardonsky offered to give her plaintiff's accounts "something to the effect of as soon as [he] get[s] rid of the old, I don't remember the rest of what he said, but it was derogatory."

We find that a reasonable factfinder could conclude from these alleged comments that Reynolds and Cardonsky harbored animus toward plaintiff based on her age and gender. A reasonable factfinder, so concluding, could infer that this animus motivated Reynolds' alleged refusal to allow Hurwitz to assign plaintiff any new accounts and Cardonsky's decisions about how to distribute available accounts and whether to support his staff in their efforts to sell new services to existing and prospective clients. Moreover, without second-guessing Cardonsky's business judgment, a reasonable factfinder could discredit his rather conclusory explanations for, *inter alia*, his decisions to transfer accounts to Farriella and Zackman but not to plaintiff. We therefore deny summary judgment on plaintiff's claims arising from defendants' actions during that part of Reynolds' and Cardonsky's tenure that falls within the statute of limitations, i.e.,

from December 4, 1995, through February, 1997.[5]

By contrast, we find that plaintiff has failed to raise a genuine issue of material fact as to whether Cardonsky's successor, Jim Kaiser, discriminated against her. Plaintiff concedes that Kaiser never made any discriminatory comments to her or, to her knowledge, to others, Flaherty Dep. at 242, nor was he reporting to Reynolds during his tenure. Plaintiff attempts to override these facts by pointing out that "there was a connection between [Kaiser] and Cardonsky and Reynolds," Pl.'s Opp'n at 14, in that Reynolds recruited Kaiser and was his supervisor prior to Kaiser's transfer to plaintiff's group, and in that Kaiser discussed his prospective employees, including plaintiff, with Cardonsky. *Id.* at 6–7. The fact remains, however, that, from the moment Kaiser assumed control of plaintiff's salesgroup, Reynolds and Cardonsky had no official influence on his decisions, and plaintiff's speculations as to any informal influence they may have had are, in the absence of specific evidence, insufficient to create a genuine issue of material fact as to Kaiser's motives.

Plaintiff's attempts to argue that Reynolds' comments reflected company policy ignore the reality that, during Kaiser's entire tenure as her supervisor, neither Reynolds nor Cardonsky was employed by defendants.[6] Nor, contrary to plaintiff's

Hurwitz's alleged statement to plaintiff concerned a matter within the scope of her employment, and we see no evidence on the current record that her transfer from publishing sales to a group called "behavior bank," which seems to do behavioral research work, *see* Dikdan Dep. at 49, so altered her relationship with Metromail that her alleged conversation with Reynolds was no longer within the "scope" of her employment when she allegedly recounted it to plaintiff.

**5.** In doing so, we do not express any judgment about plaintiff's likelihood of success at trial.

**6.** There remains some uncertainty as to when exactly Reynolds left Metromail. During his deposition, Reynolds testified that, in December of 1996, he left his position as senior vice president/general manager of list-enhancement services, a position that included oversight of plaintiff's group. Reynolds Dep. at 11. However, he also testified that he retained the title of senior vice president/general manager for a few months thereafter, al-

position, does *Danzer v. Norden Systems, Inc.*, 151 F.3d 50 (2d Cir.1998) control this case. In that case, the court rejected the defendants' argument that an officer's derogatory remarks were irrelevant because he was not the person who actually fired the plaintiff, finding instead that these remarks could be perceived as reflecting company policy. However, there was no indication in that case that the speaker no longer held a position of authority in the defendant company.

Plaintiff alleges that Kaiser discriminated against her in various ways: by warning her that she still had to prove herself, by failing to meet with her clients, and by assigning the Doubleday account to Elyssa London instead of plaintiff.[7] Pl.'s Opp'n at 7–8. Kaiser's warning to plaintiff, while it might have constituted evidence of animus had there also been evidence of discrimination, does not constitute an adverse employment actions. *See supra* note 2. As for Kaiser's failure to meet with plaintiff's clients, Kaiser testified, and plaintiff does not dispute, that he instituted a 90–day moratorium on client meetings when he first came to plaintiff's department, Kaiser Dep. at 144, that he only met with one client during that period, and only at that client's direct insistence, and

that thereafter he met with clients only at the specific request of the account manager. P.[']s Counterstatement Pursuant to Local Rule 56.1 at 21; Kaiser Dep. at 144–45. Moreover, Kaiser testified that he made more than one attempt, though unsuccessful, to contact another client whom plaintiff asked him to contact. Kaiser Dep. at 139–40. In light of these facts, plaintiff has failed to allege evidence sufficient to support a finding that Kaiser discriminated against plaintiff by refusing to meet with her clients.

Plaintiff also alleges that Kaiser discriminated against her in his assignment of the Doubleday account. She bases this claim, largely, on the fact that he assigned the Doubleday account to Elyssa London, a younger woman, rather than to plaintiff. Pl.'s Opp'n at 18. Of course, standing on its own, this fact is insufficient to support a reasonable inference that his decision was discriminatory. *See Fagan*, 186 F.3d at 134 ("The replacement of an older worker with a younger worker or workers does not itself prove unlawful discrimination."). Plaintiff attempts to substantiate her allegation by pointing out various facts that she believes made her a far stronger candidate for the account: that she had managed the Doubleday account in the past,

---

though he had no actual responsibility. *Id.* Despite this ambiguity, plaintiff does not appear to be arguing that Reynolds continued to hold a position of authority after Kaiser replaced Cardonsky.

**7.** Plaintiff vaguely refers to Kaiser's decision to transfer a young, male colleague of plaintiff's, Findeisen, to the newly-formed lettershop sales department, rather than transfer plaintiff. Pl.'s Opp. at 7. It is not clear from plaintiff's submission whether she is raising this as an independent basis for damages or is raising it simply as evidence of discriminatory animus. This lack of clarity is exacerbated by the lack of a clear record of the timing and source of the decision to transfer Findeisen. Specifically, there appears to be some confu-

sion as to whether Kaiser made the decision to transfer Findeisen, *see id.*, or merely implemented a decision made by Reynolds and others, *see* Kaiser Dep. at 178–83. We find plaintiff's submission to be insufficient to raise a triable issue as to Kaiser (assuming that he was the decisionmaker), given his undisputed testimony that, at the time the decision was made, Findeisen had the most pre-existing lettershop business in the department. Nonetheless, plaintiff may be able to argue that Reynolds in fact made the transfer decision, and, based on his alleged discriminatory remarks, may be able to further argue that he acted out of discriminatory animus. We express no opinion on the viability of that argument.

and they liked her; that London was less experienced; that the Doubleday contact suggested that plaintiff be given the account; and that Sharon Buck, who directed the production team for the account, told Kaiser that she would have no problem working with plaintiff but would need his help working with London. However, "it is not the function of a fact-finder to second guess business decisions ... [unless] the employer's 'business decision' was so lacking in merit as to call into question its genuineness." *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1116 (2d Cir. 1988).

Moreover, whatever force this circumstantial evidence might have is substantially countered by Kaiser's detailed explanation of the reasoning behind his decision to assign the account to London. According to Kaiser's testimony, he concluded that, although Doubleday faulted the account manager for various problems with the account, the problem in fact lay with the production department, and in the past, London had been very effective at pressuring the production department to take extraordinary measure to fix production problems.[8] Kaiser Dep. at 162–63. Without, of course, crediting this account as true, we nonetheless find that it neutralizes plaintiff's argument that the decision was implausible on its face, which is the sole basis for her prima facie case that the Doubleday assignment was discriminatory.

Given that plaintiff has failed to supply facts sufficient to support an inference of discrimination or to call defendant's explanation into question, we grant defendants' motion for summary judgment on the issue of whether Kaiser discriminated against her.

## CONCLUSION

For the forgoing reasons, we deny defendant's summary judgment motion with respect to plaintiff's claims arising from all adverse employment actions occurring from December 4, 1995 through the end of Cardonsky's and Reynolds' active tenure and grant defendant's motion with respect to all other claims. The parties are directed to appear before the court on November 25, 2003, at 3 p.m.

**IT IS SO ORDERED.**

---

8. Plaintiff attempts to argue that this explanation is called into doubt by her allegation that, when Kaiser announced the decision at a sales meeting, he stated as his reason that London had just lost an account. However, as defendants argue, the two explanations are not incompatible, and Kaiser may have explained his decision as he did at the sales meeting so as not to insult others on his staff.