Donovan ANDERSON, Plaintiff,

v.

DAVIS POLK & WARDWELL LLP, Lawrence Jacobs, individually and as Managing Attorney, Jennifer Candelario, individually and as Assistant Managing Attorney, Lamina Vucetovic, individually and as Managing Clerk, Robert Jones, Duane Grant, Emmanuel Fashakin, and 1–100 unknown employees of DPW, in both their individual and official capacities, Defendants.

No. 10 Civ. 9338(NRB).

United States District Court, S.D. New York.

March 6, 2012.

Donovan Anderson, Brooklyn, NY, for Plaintiff.

Barry Asen, Esq., Lauren A. Malanga, Esq., Epstein Becker & Green, P.C., New York, NY, for Defendants.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, District Judge.

### I. Introduction

Donovan Anderson (the "plaintiff") files suit against his former employer, Davis Polk & Wardwell LLP ("DPW"), and various of his former supervisors and colleagues (collectively, the "defendants"), bringing claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, as amended (the "ADEA"), the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*, as amended (the "FLSA"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* (the "NYSHRL"), the New York City Human Rights Law, N.Y. City Admin. Code § 8–101 *et seq.* (the "NYCHRL") and the New York State Labor Law § 650 *et seq.* (the "NYSLL"). In particular, plaintiff alleges: (1) sexual harassment; (2) gender discrimination in connection with his terms of employment; (3) age discrimination in connection with his termination; (4) failure to compensate in connection with overtime and unreimbursed expenses; (5) sexual-orientation discrimination; (6) retaliation in connec-

tion with an internal complaint; (7) failure to promote; and (8) race discrimination. Pending before the Court are defendants' motions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all of plaintiff's claims with the exception of certain of his sexual harassment claims against DPW, Jennifer Candelario, Robert Jones, and Duane Grant and pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to strike certain immaterial, impertinent, and scandalous allegations from plaintiff's amended complaint. For the reasons stated below, defendants' motions are granted in part and denied in part.

### II. Background [1]

Plaintiff, who is a heterosexual black male, was born on July 9, 1957. Am. Compl. 10.[2] For over sixteen years between September 7, 1993 and November 4, 2009, plaintiff worked as a clerk in DPW's Managing Attorney's Office. *Id.* at 17. On the later date he was terminated. *Id.* His claims in this action arise both from his firing but also earlier events including conduct beginning in close proximity to the date on which he was hired in the early 1990s. *Id.* at 9.

Defendants include DPW itself as well as various supervisors and colleagues of plaintiff in the Managing Attorney's Office: Lawrence Jacobs ("Jacobs") is the Managing Attorney; Jennifer Candelario ("Candelario") is the Assistant Managing Attorney; Lamina Vucetovic ("Vucetovic") is

---

**1.** The following facts are drawn from plaintiff's amended complaint and the exhibits thereto as well as his opposing papers to defendants' motions to dismiss and to strike. *See* Pt. III.A.1., *infra.*

**2.** Citations to "Am. Compl." encompass the amended complaint as well its exhibits, which include plaintiff's charge and amended

charge filed with the Equal Employment Opportunity Commission. Because the amended complaint is not composed of numbered paragraphs and the documents attached to it are similarly arranged in varying fashion, such citations are to the page of the overall document that was filed on the docket on April 13, 2011.

the Managing Clerk; and Robert Jones ("Jones"), Duane Grant ("Grant"), and Emmanuel Fashakin ("Fashakin") appear to have worked as clerks alongside plaintiff. *See id.* at 1, 2, 92. It seems that Jacobs, Candelario, and Vucetovic all had overlapping supervisory responsibilities for plaintiff at different points during his term of employment. *See id.* at 5.

In addition to defendants, plaintiff also references numerous current and past employees of DPW as well as other law firms in his various submissions. In some cases, these individuals are referenced in connection with conduct that underlies or is facially related to plaintiff's claims. *See, e.g., id.* at 2. In other cases, these individuals are referenced in connection with tangents and asides whose purpose in at least some cases is evidently to intimidate or humiliate the men and women so referenced. *See, e.g., id.* at 95 n. 10.

Following his termination, on April 23, 2010, plaintiff filed a short charge alleging employment discrimination against DPW with the Manhattan Office of the Equal Employment Opportunity Commission (the "EEOC"). *See* Am. Compl. 10, 13–16. According to plaintiff, he subsequently received a letter on June 15, 2010 from the EEOC that informed him that due to the volume of pending charges, his charge had been transferred to the Newark Office of the EEOC. *See* Opp'n 1. Thereafter, on or about September 1, 2010, plaintiff prepared an amended charge, which it appears he likely filed with the Newark Office, in which he added considerably to his initial allegations, and to which he attached

a number of exhibits. *See* Am. Compl. 17–100.[3] On September 14, 2010, the Newark Office of the EEOC wrote to plaintiff to inform him that it was unable to conclude that DPW had violated federal law, that it was dismissing his charge, and that plaintiff had ninety days from receipt of its letter to bring suit. *See* Am. Compl. 102–06.

On December 15, 2010, plaintiff initiated his suit against defendants in this Court. On April 13, 2011, he filed his amended complaint, to which he attached his charge, amended charge and its exhibits, and also the EEOC's letter of September 14, 2010. Totaling 107 pages, the amended complaint contains allegations (oft-repeated) that are capable of being construed as employment discrimination claims and which are examined below in Part III.A.2 *seriatim.* However, the amended complaint and plaintiff's opposition papers to the pending motions also raise a host of allegations involving petty grievances and workplace jealousies that are so numerous that we do not individually examine each of them. To the extent that plaintiff intended these allegations to support any of the employment discrimination claims that we have identified and reviewed—it is often not clear— we have carefully examined them and find that they do not support a claim upon which relief can be granted either singularly or collectively.

Having previously sought our permission to proceed without a pre-motion conference, defendants filed their pending motions to dismiss and to strike on May 25, 2011.[4]

---

**3.** While it is not entirely clear, it appears possible that the amended charge was characterized as a "rebuttal" by the EEOC, which makes reference to such a document in its letter informing plaintiff of the dismissal of his claims and his right to sue. Defendants have significantly not suggested that plaintiff's

amended charge was not received or considered by the EEOC.

**4.** In citing the parties motion papers, we use the following abbreviations: Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss All But One of Pl.'s Claims and to Strike Certain of his Allegations in the First Am. Compl.

## III. Discussion

### A. Motion to Dismiss

#### 1. Standard of Review

When deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in a plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). Mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994) (internal quotation marks omitted). A complaint must include "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Where plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* This pleading standard applies in "all civil actions." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868 (2009). In employment discrimination cases, a plaintiff is not required to establish a *prima facie* case at the pleadings stage. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement"). "Reconciling *Swierkiewicz*, *Twombly*, and *Iqbal*, a complaint need not establish a *prima facie* case of employment discrimination to survive a motion to dismiss; however, the claim must be *facially plausible* and must give fair notice

to the defendants of the basis for the claim." *Barbosa v. Continuum Health Partners Inc.*, 716 F.Supp.2d 210, 215 (S.D.N.Y.2010) (internal quotation marks and citation omitted) (emphasis added).

 Where, as here, a complaint is filed by a *pro se* plaintiff, it "is 'to be liberally construed,' . . . and . . . 'however inartfully pleaded, [it] must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). In other words, courts must interpret such pleadings "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). Nevertheless, a *pro se* plaintiff remains subject to the same general standard applicable to all civil actions under *Twombly* and *Iqbal.* *See Schwamborn v. Cnty. of Nassau*, 348 Fed.Appx. 634, 635 (2d Cir.2009).

 In deciding a motion under Rule 12(b)(6), courts may consider "any written instrument attached to the complaint" and "statements or documents incorporated into the complaint by reference." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007). Here, we accordingly consider the allegations in the amended complaint and the exhibits attached to it. In addition, in plaintiff's opposition papers, he raises new factual allegations to support his various claims, sometimes doing so in connection with a request to further amend his amended complaint. Ordinarily, plaintiffs may not amend their complaints through their motion papers. *See Wright v. Ernst & Young L.L.P.*, 152 F.3d 169, 178 (2d Cir.

("Br."); Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss and to Strike Certain Allegations in the First. Am. Compl. ("Opp'n"); and Defs.' Reply Mem. of Law. in Supp. of

Their Mot. to Dismiss All But One of Pl.'s Claims and to Strike Certain of his Allegations in the First Am. Compl. ("Reply").

1998). However, defendants do not object to plaintiff's *ad hoc* introduction of additional facts and answer his further allegations in their reply papers. Because "leave to amend a complaint, particularly one of a *pro se* litigant, should be liberally granted," *Schwamborn v. Cnty. of Nassau,* 348 Fed.Appx. 634, 635 (2d Cir.2009) (citing *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003)), we will treat plaintiff's opposition papers to the extent that they raise new factual allegations as further amending his amended complaint. *See Sommersett v. City of New York,* No. 09 Civ. 5916(LTS), 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) ("where a *pro se* plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations") (internal quotation marks omitted).

## 2. Failure to State a Claim Upon Which Relief Can Be Granted

In reviewing whether plaintiff's amended complaint as further amended by his opposition papers fails to state a claim on which relief can be granted, we address eight different sets of claims that plaintiff may be understood to assert.

### a. Sexual Harassment under Title VII, the NYSHRL, and the NYCHRL

A generous reading of plaintiff's amended complaint and opposition papers suggests that he asserts sexual harassment claims against DPW, Candelario, Jones, and Grant as well as Jacobs, Vucetovic, and Fashakin, relating to incidents occurring between 1993 and 1999, from 2004 onwards, and in 2008 and 2009. Because defendants seek to dismiss these claims against Jacobs, Vucetovic, and Fashakin in their entirety but against DPW, Candelar-

io, Jones, and Grant only to the extent that they are time barred, we approach the analysis of these two sets of claims separately.

### i. Sexual Harassment Claims Sought to Be Dismissed in Their Entirety

 Defendants seek to dismiss plaintiff's claims of sexual harassment in their entirety as to Jacobs, Vucetovic, and Fashakin. *See* Br. 3–5. In their moving papers, defendants correctly argue (i) that individuals may not be held liable under Title VII, *see* Br. 4; *Wrighten v. Glowski,* 232 F.3d 119, 119 (2d Cir.2000) (per curiam), and (ii) that individuals may only be held liable under the NYSHRL and NYCHRL where they participated in discriminatory conduct. *See* Br. 5; *Feingold v. New York,* 366 F.3d 138, 157–159 (2d Cir.2004). In his opposition papers, plaintiff does not appear to contest either one of these principles but does argue that Jacobs and Vucetovic participated in discriminatory conduct.[5]

 Under Title VII, sexual harassment may be cognizable as gender discrimination and has come to be analyzed under two general theories: *quid pro quo* and hostile work environment. *See Karibian v. Columbia Univ.,* 14 F.3d 773, 777 (2d Cir.1994). In this case, plaintiff does not argue that benefits in the workplace were conditioned on his submission to sexual advances, *see id.,* and accordingly, we analyze his allegations of sexual harassment as a hostile work environment claim. *See Bermudez v. City of New York,* 783 F.Supp.2d 560, 587, 588 (S.D.N.Y.2011) (analyzing hostile work environment claim against individual defendant under the NYSHRL and NYCHRL). "To state a claim for a hostile work environment in

---

**5.** Plaintiff does not appear to contest dismissal of his sexual harassment claims as to Fa- shakin, and it is not even apparent that he intended to assert such claims.

violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive-that is, creates an environment that a reasonable person would find hostile or abusive; [and] (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [gender]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir.2007) (internal quotation marks and ellipses omitted). A hostile work environment claim premised on sexual harassment is reviewed according to the same standard under the NYSHRL. *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n. 2 (2d Cir.2010). However, the NYCHRL permits liability for sexual harassment that does not rise to the level of "severe" or "pervasive" conduct but only amounts to "unwanted gender-based conduct." *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 76, 872 N.Y.S.2d 27, 38 (1st Dep't 2009). Accordingly, "claims under the [NYCHRL] must be given 'an independent liberal construction.'" *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir.2009) (quoting *Williams*, 61 A.D.3d at 66, 872 N.Y.S.2d at 31). We emphasize that a plaintiff's complaint need not establish a *prima facie* case of hostile work environment at this stage but "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

■ We first consider plaintiff's sexual harassment claim against Vucetovic. Without specifying a time period, plaintiff alleges that "Vucetovic would come around my cube on occasions and place her vagina literally on my left shoulder or inches from my face" and that "[i]t is also suspected that Vucetovic's vagina is unhealthy, (discovery will prove this)." Am. Compl. 3. Elsewhere, plaintiff restates the same allegation, asserting "Vucetovic would at times come to my cube and position herself i[n] such a way that her vagina is practically sitting on my left shoulder, or would stand so close to me that if I was to turn to my left my nose would be directly in front of the bottom of her stomach." Am. Compl. 31. Plaintiff indicates that he complained of Vucetovic's conduct to Jacobs, who allegedly responded to plaintiff by indicating that he would allow Candelario to address the situation with Vucetovic or by suggesting that plaintiff should take Vucetovic to lunch. *See* Am. Compl. 31; Opp'n 4.

We find that plaintiff's allegations at most support the inference that on some occasions Vucetovic, who was plaintiff's supervisor and accordingly had reason to visit him in his cubicle, *see* Am. Compl. 31, stood too close to plaintiff. From an objective perspective, her conduct is far short of what might be called "severe" or "pervasive" and so is facially insufficient to support a claim under the NYSHRL. Even assuming a periodic lapse of what might be considered perfect manners in a workplace setting, Vucetovic's conduct plainly does not violate even the lower threshold of the NYCHRL, which is not intended to "operate as a 'general civility code.'" *Williams*, 61 A.D.3d at 79, 872 N.Y.S.2d at 40.

■ Turning to plaintiff's sexual harassment claim against Jacobs, we similarly find that it fails as a matter of law. While an employee may be held personally liable as an aider and abettor for failing to take remedial action in response to a complaint of sexual harassment under the NYSHRL and NYCHRL, plaintiff only alleges that he complained to Jacobs regarding Vucetovic's behavior, which we have found is insufficient to support a claim of sexual harassment. *See Patane*, 508 F.3d at 115 n. 7 (noting possible aider and abettor liability of two employees to whom

complaints of sexual harassment were brought under the NYSHRL and NYCHRL but noting the requirement of "principal liability"); *McIlwain v. Korbean Intern. Inv. Corp.*, 896 F.Supp. 1373, 1382–1383 (S.D.N.Y.1995) (analyzing sexual harassment claim under the NYSHRL and stating "an individual who is an employee of the business that employs the plaintiff ... can aid, abet, incite, coerce or compel, a primary violation of the [NYS]HRL committed by another employee or the business itself"). While plaintiff further argues that "there are witnesses to Jacobs['s] instructions to other employees of DPW and [p]laintiff's immediate supervisors on how to discriminate, harass, diminish his capacity, antagonize, etc. the [p]laintiff," he nowhere alleges, even in conclusory fashion, that Jacobs instructed others to sexually harass him. Opp'n 4. The absence of such an allegation renders his complaint totally devoid of any facts that would make his claim against Jacobs plausible.

### ii. Sexual Harassment Claims Sought to Be Dismissed Only to the Extent That They Are Time–Barred

While defendants also vigorously contest the merit of plaintiff's sexual harassment claims against DPW, Candelario, Jones, and Grant, they do not at this stage seek the outright dismissal of these claims. However, defendants do seek to dismiss those portions of these claims that they argue are time barred. *See* Br. 3–4. Specifically, defendants argue that plaintiff's sexual harassment claims are "time-barred concerning events up to 1999 and in 2004." Reply 3. Plaintiff contests this argument, suggesting the sexual harassment was all part of the same violation. *See* Opp'n 1–2, 5, 14.

 Under Title VII, a plaintiff must have filed a charge with the EEOC within 180 days of the unlawful employment practice or 300 days where the plaintiff "initially instituted proceedings with a [s]tate or local agency with authority to grant or seek relief from such practice." 42 U.S.C. § 2000e–5(e)(1). Pursuant to a longstanding Work Sharing Agreement between the EEOC and the New York State Division of Human Rights, however, a claim initially filed with the EEOC is "deemed filed 'initially' with the state agency" and accordingly a complaint filed within 300 days of the unlawful employment practice with the EEOC is timely. *Francis v. Blaikie Group*, 372 F.Supp.2d 741, 746 n. 7 (S.D.N.Y.2005) (internal quotation marks and citations omitted). Under the NYSHRL and NYCHRL, a plaintiff must bring suit within three years of an unlawful employment practice. *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir.2007).

 However, these time bars may be relaxed in the context of hostile work environment claims. Under Title VII, "[a] charge alleging a hostile work environment claim ... will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the [appropriate] time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In deciding whether alleged sexual harassment that occurs both before and after the time-barred date can be said to be part of the same violation, "*Morgan* requires courts to make an individualized assessment of whether incidents and episodes are related." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70 (2d Cir.2010). While *Morgan* was decided in the context of Title VII, its holding also applies to claims under the NYSHRL and NYCHRL. *See Staff v. Pall*, 233 F.Supp.2d 516, 527–28 (S.D.N.Y.2002), *aff'd*, 76 Fed.Appx. 366

(2d Cir.2003) (deciding *Morgan*'s exception applies to NYSHRL claims); *Flaherty v. Metromail Corp.*, 293 F.Supp.2d 355, 358–59 (S.D.N.Y.2003) (applying *Morgan* to NYSHRL and NYCHRL claims).

Here, plaintiff filed his initial charge with the EEOC on April 23, 2010 and filed his initial complaint in this action on December 15, 2010. Accordingly, (i) sexual harassment occurring prior to June 27, 2009 is time-barred under Title VII and (ii) sexual harassment occurring prior to December 15, 2007 is time-barred under the NYSHRL and NYCHRL *unless* it forms part of a timely hostile work environment claim.

■ Between 1993 and 1999, plaintiff complains that he was sexually harassed by two former employees of DPW. *See* Opp'n 2–3. This claim is time-barred under both Title VII and the NYSHRL and NYCHRL. Even assuming that a hostile work environment claim arises from the alleged sexual harassment occurring in 2008 and 2009, these earlier episodes are plainly unrelated because they involve wholly different employees of DPW. *See Harris v. South Huntington School Dist.*, No. 06 Civ. 3879(DGT), 2009 WL 875538, at *11 (E.D.N.Y. Mar. 30, 2009) ("[m]any of the untimely incidents of harassment that plaintiff suffered resulted from actions taken by completely different employees from those involved in plaintiff's timely harassment claims"). In addition, these earlier episodes happened at least five years prior to the next incident of sexual harassment in the workplace about which plaintiff complains. *See Drees v. Cnty. of Suffolk*, No. 06 Civ. 3298(JFB), 2009 WL 875530, at *8 (E.D.N.Y. Mar. 30, 2009) (finding *Morgan* exception did not apply where *inter alia* "there were no incidents whatsoever for at least [five] years" and different employees were involved in the prior incidents).

Defendants also seek to dismiss on statute of limitations grounds plaintiff's allegation that "starting in or about 2004" Jones "told [plaintiff] about his trips to homosexual clubs." Am. Compl. 2. To the extent that this conduct persisted after December 15, 2007 it would be timely under the NYSHRL and NYCHRL. If it persisted after June 27, 2009, then it would also be timely under Title VII. Whether narrowly-tailored discovery will establish that any of the earlier alleged remarks, if proven, are adequately related under *Morgan* to support a hostile work environment claim remains to be seen. However, at this stage of the litigation, plaintiff has attributed a sufficiently prolonged timeframe to these alleged statements to prevent dismissal of the untimely portion of them for now. *See McGullam*, 609 F.3d at 78 ("where 'it was the same harasser ... committing the same harassing acts'" both "'before and after the limitations period'" the acts were considered as part of the same hostile work environment claim) (quoting *Rowe v. Hussmann Corp.*, 381 F.3d 775, 781 (8th Cir.2004)).

Accordingly, plaintiff's claims of sexual harassment are dismissed except insofar as they are brought against DPW, Candelario, Jones, and Grant and relate to the specific incidents of which plaintiff has complained occurring from 2004 onwards regarding Jones and otherwise in 2008 and 2009.

**b. Gender Discrimination under Title VII, the NYSHRL, and the NYCHRL**

Plaintiff asserts that he was discriminated against in the terms of his employment because of his gender. In support of this claim, plaintiff principally asserts: (i) he was given "menial tasks" in contrast to a colleague, Charmaine Barrett ("Barrett"), to whom Candelario gave "all the substantive assignments," Am. Compl. 4, 9,

14, 41; Opp'n 7; (ii) plaintiff was not trained in how to file documents electronically with federal and state courts "but Barrett and other females were," Am. Compl. 4–5, 24–25, 29; (iii) Barrett was given "[a]ll overtime" while plaintiff was denied overtime, Am. Compl. 8, 21; (iv) Barrett was given overtime on holidays, see id. at 5, 20; Opp'n 6; and (v) a surveillance camera was placed in his cubicle. See id. at 6; Opp'n 6. Defendants seek dismissal of this claim in its entirety. We address the bases for this claim in turn.

 With regard to (i), plaintiff repeats his allegations that he was given "menial tasks" throughout his pleadings, but he does not suggest the nature of these tasks aside from once stating that he was responsible for serving papers in buildings whose lobbies smelled of urine and on one occasion was asked to serve an inmate on Riker's Island. See Am. Compl. 32. Nowhere does plaintiff plead any facts regarding the tasks that Barrett received and that he conclusorily asserts were "substantive." Id. at 4. We disregard this conclusory assertion "because such statements are 'not entitled to the assumption of truth.'" Milne v. Navigant Consulting, No. 08 Civ. 8964(NRB), 2009 WL 4437412, at *6 (S.D.N.Y. Nov. 30, 2009) (quoting Iqbal, 129 S.Ct. at 1950).

 However, even if plaintiff adequately pleaded that his terms of employment were demonstrably less favorable than those afforded to Barrett, his claim of gender discrimination on this basis is still not facially plausible. "[T]he law permits a plaintiff to raise a plausible inference of discrimination by alleging 'preferential treatment given to similarly situated individuals.'" Sank v. City University of New York, No. 10 Civ. 4975(RWS), 2011 WL 5120668, at *11 (S.D.N.Y. Oct. 28, 2011) (quoting Perry v. State of N.Y. Dep't of Labor, No. 08 Civ. 4610(PKC), 2009 WL

2575713, at *2 (S.D.N.Y. Aug. 20, 2009), aff'd, 398 Fed.Appx. 628 (2d Cir.2010)). However, "this method is allowed only if the alleged comparators are 'similarly situated in all material respects.'" Id. (quoting Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir.1997)). "Absent allegations plausibly suggesting that the [fe]male colleagues who purportedly received superior treatment were similarly situated to [plaintiff] in all relevant respects ... [plaintiff]'s conclusory assertions of differential treatment do not permit a plausible inference of gender discrimination." Id. Here, plaintiff has failed to allege in even conclusory fashion that he and Barrett were similarly-situated employees of DPW. Plaintiff in effect asks us to assume that all members of the clerical staff in the Managing Attorney's Office are interchangeable. That is not an assumption we are prepared to accept.

This same reasoning applies to (ii) because plaintiff does not suggest that he was similarly situated to Barrett and the other women whom he alleges received training on how to electronically file documents.

As to (iii), plaintiff's assertions regarding the comparatively favorable treatment shown to Barrett regarding overtime also fail to support his claim of gender discrimination in large part because the documents that plaintiff attaches to his amended complaint squarely refute his allegations. "While [we are] generally required, on a motion to dismiss, to accept a complaint's factual allegations as true ... [we] need not accept factual allegations that are ... contradicted by exhibits." BLD Prods., LLC v. Viacom, Inc., No. 10 Civ. 2625(PGG), 2011 WL 1327340, at *10 (S.D.N.Y. Mar. 31, 2011). In his opposition papers, plaintiff alleges that "he was denied overtime [but] overtime was given to [Barrett] as a matter of course." Opp'n

6. In his amended complaint, plaintiff describes the overtime system named After Hour Assignment ("AHA") that Candelario instituted in DPW's Managing Attorney's Office, where both he and Barrett worked. *See id.* at 4. As plaintiff explains, at the beginning of each month, personnel in the Managing Attorney's Office would be given a sheet that assigned them certain days of coverage for which they could earn overtime. *See id.* at 4, 20. Plaintiff attached thirty-five copies of these sheets to his amended charge to the EEOC, covering thirty-five months between September 2006 and October 2009. *See id.* at 48–83. From our examination of these documents, we find that contrary to plaintiff's representations, he and Barrett appear to have been assigned almost the exact same number of days on which they could earn overtime in the roughly three years preceding plaintiff's termination.[6] While plaintiff can be understood to complain about the adoption of AHA, which it appears brought an end to his prior practice of earning overtime by "stay[ing] late if any of the attorneys of DPW wanted a volunteer," the system appears to reflect a model of fairness from which no one could plausibly infer an inequitable practice, let alone gender discrimination. Am. Compl. 4.

With regard to (iv), plaintiff further complains of the fact that Barrett was assigned days of coverage on holidays through AHA for which she allegedly received additional compensation above and beyond overtime, specifically drawing our attention to four dates, November 28, 2008, December 26, 2008, January 2, 2009, and February 16, 2009. *See* Opp'n 6. In contrast, plaintiff states that "[he] was never asked to work any holidays." *Id.* As in connection with bases (i) and (ii) discussed immediately above, plaintiff suggests no facts to support an inference that Candelario chose Barrett because of her discriminatory animus towards him as a man aside from the fact that Barrett is a woman. In the absence of allegations that plaintiff was similarly situated to Barrett, this fact is insufficient to make his claim plausible. *See Sank,* 2011 WL 5120668, at *11.

■■■ Finally, as to (v), plaintiff's amended complaint, as further amended by his opposing papers, "does not contain any factual allegation sufficient to plausibly suggest [a defendant's] discriminatory state of mind" in connection with the placement of a surveillance camera in his cubicle. *Iqbal,* 129 S.Ct. at 1952. "The *sine qua non* of a gender-based discriminatory action claim . . . is that the discrimination must be because of [gender]." *Patane v. Clark,* 508 F.3d 106, 111 (2d Cir. 2007) (internal quotation marks omitted).

Accordingly, defendant's claim of gender discrimination is dismissed in its entirety.

### c. Age Discrimination under the ADEA, the NYSHRL, and the NYCHRL

■■■ Plaintiff asserts that his termination in November 2009 gives rise to a

---

6. Plaintiff does not include the sheets for June to August 2009. From the thirty-five (35) sheets that he does provide, the following statistics emerge: in seventeen (17) months, plaintiff and Barrett each were assigned three (3) overtime days; in three (3) months, plaintiff and Barrett each were assigned two (2) overtime days; in six (6) months plaintiff was assigned three (3) overtime days to Barrett's two (2) overtime days; in seven (7) months, Barrett was assigned three (3) overtime days to plaintiff's two (2) overtime days, however, in five (5) of these months plaintiff was also scheduled to take extended vacations; in one (1) month, plaintiff was assigned four (4) overtime days to Barrett's three (3) overtime days; and in one (1) month, Barrett was assigned four (4) overtime days to plaintiff's three (3) overtime days. In total, plaintiff was assigned ninety-four (94) overtime days to Barrett's ninety-seven (97) days.

claim of age discrimination. In support of this claim, he asserts that in a meeting in 2009 Candelario, the Assistant Managing Attorney, told the Managing Attorney's Office that DPW "has been looking for reasons to fire its[ ] employees," that "in the latter quarter of 2009 [DPW] has been firing employees who have been working at DPW for decades and [whose] salary has become maybe twice or more [that] of a newly hired employee," and that "[t]hese employees like [him]self are over [fifty] years of age." Am. Compl. 6. Plaintiff earlier asserted variations of these allegations in the charge and amended charge that he filed with the EEOC, see id. at 15, 36–37, stating in the amended charge that plaintiff is over fifty years of age and that other similarly aged employees have been fired "not directly because of their age but because they were making too much money and [were] expendable." Id. at 41. Defendants seek dismissal of this claim in its entirety.

"Employment discrimination claims brought under ... the NYSHRL[ ] and the NYCHRL are generally analyzed under the same evidentiary framework that applies to ... ADEA claims." Barbosa v. Continuum Health Partners Inc., 716 F.Supp.2d 210, 217 (S.D.N.Y.2010). An age discrimination claim brought under any of those statutes must permit a court to infer that it is plausible that the plaintiff suffered an adverse employment action because of his age. See Ortiz v. Standard & Poor's, No. 10 Civ. 8490(NRB), 2011 WL 4056901, at *3 (S.D.N.Y. Aug. 29, 2011) (dismissing age discrimination claim under the NYSHRL and NYCHRL "because [plaintiff] does not plead sufficient facts to state a plausible claim that [defendant] took any adverse action against him because of ... his age"). We cannot draw this conclusion here because plaintiff has alleged no facts with regard to his own

termination that suggest it was influenced by his age.

With that said, plaintiff could be understood to allege a disparate impact as opposed to disparate treatment claim. As defendants suggest in their moving papers, however, employers are permitted to base employment decisions on financial considerations provided that a disparate impact on older employees does not result. See Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 117 (2d Cir.1991) (acknowledging "high salary and age may be related" but emphasizing "so long as the employer's decisions view each employee individually on the merits, do not impose a general rule that has a disparate impact on older workers, ... and are based solely on financial considerations, its actions are not barred by the ADEA"). While plaintiff need not establish a prima facie case of disparate impact at this stage, such a case is typically "made out by showing either a gross statistical disparity, or a statistically significant adverse impact coupled with other evidence of discrimination." Nathe v. Weight Watchers Int'l, Inc., No. 06 Civ. 4154(DAB), 2010 WL 3000175, at *5 (S.D.N.Y. July 26, 2010) (internal quotation marks omitted). In possible support of the allegation that a disparate impact of DPW's termination policies fell on older employees, plaintiff asserts that he was among a number of such employees who were fired. However, in his opposing papers, plaintiff acknowledges that he cannot identify any of these older employees, asserting that "[b]asic discovery will show their names." Opp'n 7. This admission in plaintiff's opposing papers, which further amend his amended complaint, makes his allegation regarding the widespread layoff of older employees simply not plausible given the length of plaintiff's employment at DPW. After working for over sixteen years at

the firm, it is simply not credible that plaintiff cannot name a single similarly long-tenured colleague who was terminated proximate to his own firing.

Accordingly, plaintiff's age discrimination claim, whether viewed as alleging disparate treatment or disparate impact, is dismissed in its entirety.

### d. Failure to Compensate under the FLSA and NYSLL

In his amended complaint and opposition papers, plaintiff can be understood to assert a failure-to-compensate claim under both the FLSA and NYSLL. In support of this claim, plaintiff principally asserts: (i) during vacations in 2007 and 2008 to Latin America, he secured copies of complaints filed in federal and state court and forwarded them directly or indirectly to partners of DPW but was not permitted to claim overtime by Candelario, see Am. Compl. 6–7; (ii) on "numerous occasions," plaintiff received telephone calls from employees of DPW while he was at home informing him that a taxi was en route to him with a package, which required plaintiff to await the package's arrival for an indeterminate time period for which he was not compensated, see Opp'n 8; and (iii) in 2008 or 2009, Jacobs requested plaintiff to assist him with an assignment for which plaintiff incurred $5,000 of expenses for which he was not reimbursed. See Am. Comp. 7; Opp'n 8–9. Defendants seek dismissal of this claim in its entirety. We address the three aspects of this claim in turn.

 With regard to (i), under the FLSA and NYSLL, an employee becomes eligible for overtime pay once he works in excess of forty hours in any workweek. See 29 U.S.C. § 207(a)(1); N.Y.C.C.R. § 142–2.2 (cross-referencing FLSA). Plaintiff appears to argue in his opposing papers that when travelling overseas "[he] was already being paid for his vacation" as though he had worked forty hours during the workweek and that "any work within th[at workweek] should be considered overtime" because it was in excess of the overtime threshold of forty hours. Opp'n 8. This argument is fundamentally flawed because in the context of overtime pay, both the FLSA and NYSLL provide for additional compensation above a certain amount of work, not paid vacation. In the closely related context of calculating an employee's "regular rate" of compensation, which determines the rate at which that employee is paid for overtime, significantly the FLSA excludes vacation payments. See Scott v. City of New York, No. 02 Civ. 9530(SAS), 2008 WL 5099952, at *3 (S.D.N.Y. Dec. 2, 2008) (emphasizing vacation payments are compensation for "nonworking" time); 29 U.S.C. § 207(e)(2) (in the context of calculating the regular rate, excluding "payments made for occasional periods when no work is performed due to vacation"); 29 C.F.R. § 778.219 (in the context of calculating the regular rate, stating because vacation pay "is not compensation for work it may not be credited toward overtime compensation due under the [FLSA]"). The apparent novelty of plaintiff's argument does not change its merit. The tasks that plaintiff claims that he performed on vacation cannot plausibly have taken more than a few hours to complete, and he is accordingly not entitled to overtime because he performed no other work during the relevant timeframe.

 As to (ii), even assuming that time spent waiting at home for delivery of a package can be interpreted as work, plaintiff's claim fails because it is simply not plausible for two reasons. First, unlike in connection with the other allegations supporting his failure-to-compensate claim, plaintiff is unable to articulate even a general time period during which "on numerous occasions" he was required to await

the delivery of packages. In his third effort at pleading a claim for failure to compensate, the lack of any indication as to when plaintiff was obliged to wait strongly suggests that he is beginning to grasp for proverbial straws. Second, in contrast to the other allegations underlying his failure-to-compensate claim, plaintiff does not indicate whether he claimed overtime in connection with these occasions. Given plaintiff's clear awareness and concern about receiving overtime, *see* Am. Compl. 4, 8, 20, it is telling that he apparently never sought overtime on this basis when he worked at DPW.

■■■ With regard to (iii), in his amended complaint, plaintiff initially asserted that Jacobs had promised plaintiff a $5,000 bonus, which promise Jacobs did not fulfill. *See* Am. Compl. 7. In his opposition papers, however, plaintiff changes tack to insist that the $5,000 "was not a bonus" but was rather "expenditures that [were] undertaken by the [p]laintiff for DPW." Opp'n 8. Plaintiff's recharacterization of his claim followed defendants' articulation in their moving papers of an argument as to why a claim premised on an unawarded bonus was flawed as a matter of law. *See* Br. 8–9. In his much earlier amended charge to the EEOC, however, plaintiff stated that he "spent *hundreds* of dollars to the get the job done" for which Jacobs had promised him $5,000. Am. Compl. 24 (emphasis added). *See also* Am. Compl. 7 ("I even spent hundreds of my own dollars"). While we are obliged at this stage to accept plaintiff's factual allegations as true, we are "not required to accept as true pleadings that are directly contradicted by other factual statements in the [a]mended [c]omplaint." *Barberan v. Nationpoint*, 706 F.Supp.2d 408, 424 (S.D.N.Y.2010). *See also Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F.Supp.2d 371, 405 (S.D.N.Y.

2001) ("a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely"). Plaintiff's most recent assertion that the $5,000 is owed to him as a reimbursement for expenses is flatly contradicted by his allegations that he only spent hundreds of dollars in completing the relevant assignment. Given this contradiction, we need not accept plaintiff's allegations as true and find that they do not support a plausible claim.

To the extent that plaintiff can be understood to raise further allegations in support of his failure-to-compensate claim, we find that they lack the requisite specificity and fail to state a cause of action upon which relief can be granted either singularly or collectively. Accordingly, plaintiff's failure-to-compensate claim is dismissed in its entirety.

### e. Sexual–Orientation Discrimination under Title VII, the NYSHRL, and the NYCHRL

Plaintiff claims that he was discriminated against in possible connection with his termination because he is a heterosexual. In support of his claim, plaintiff asserts: (i) Jones, who he alleges is a homosexual, was investigated for embezzling from DPW and was not terminated, but plaintiff called Fashakin a liar and was terminated, *see* Am. Compl. 7; (ii) homosexual black males are "given" preferences at DPW and are permitted to break the law. *See, e.g.,* Opp'n 9. Defendants seek dismissal of this claim in its entirety.

■■■ As a matter of law, "sexual orientation is not a protected category under Title VII." *DiPetto v. U.S. Postal Serv.*, 383 Fed.Appx. 102, 104 n. 1 (2d

Cir.2010).[7] However, discrimination in the workplace on the basis of sexual orientation is recognized under the NYSHRL and NYCHRL. *See* N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8–107(1)(a).

 Plaintiff can be understood to implicitly suggest that he was fired because of his sexual orientation but does not affirmatively make this allegation, instead asserting, "I was not able to grow at DPW as a heterosexual male and [was] discriminated against because I am heterosexual." Am. Compl. 7. Setting aside this conclusory language, more importantly plaintiff fails to allege facts from which it is possible to plausibly infer a causal nexus between his heterosexuality and his termination, the only adverse employment action that plaintiff conceivably raises in this context. To the contrary, in the few sentences that plaintiff dedicates to this claim in his amended complaint and opposing papers, he affirmatively provides a non-discriminatory reason for his termination, namely that he accused a colleague of lying. *See Riscili v. Gibson Guitar Corp.*, No. 06 Civ. 7596(RJH), 2007 WL 2005555, at *2 (S.D.N.Y. July 10, 2007) (dismissing sexual-orientation claim under the NYCHRL where plaintiff failed to expressly state that he was terminated because of his sexual orientation and suggested a non-discriminatory basis for that

termination). Plaintiff's effort to support causation by contrasting his treatment against that of an allegedly homosexual employee who was *investigated* for embezzlement but not terminated amounts to nothing more than speculation. Moreover, the argument is logically flawed because plaintiff fails to assert whether this other employee was ultimately found to be a thief or instead was exonerated.[8]

Accordingly, plaintiff's claim that he was discriminated against because of his sexual orientation is dismissed in its entirety.

### f. Retaliation under Title VII, the NYSHRL, and the NYCHRL

Plaintiff appears to claim that he was retaliated against for complaining in 2006 to DPW regarding "discriminatory treatment" and "harassment" by Candelario. Am. Compl. 8, 33.[9] Plaintiff asserts that he brought his complaint to an internal discrimination committee that referred it to the Human Resources Department in DPW. *Id.* at 33. A generous reading of plaintiff's amended complaint and opposing papers suggests that following his complaint, Candelario retaliated against him in a number of ways: (i) Candelario permitted a female employee to work overtime but prevented plaintiff from doing the same, *see id.* at 8; (ii) Candelario relegated plaintiff to "menial tasks," see *id.* at 14;

---

**7.** It is clear that plaintiff's claim is premised on his sexual orientation and not his gender, let alone his failure to conform to gender stereotypes. *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 218 (2d Cir.2005).

**8.** Insofar as plaintiff attempts to allege a disparate impact claim, he fails to give defendants adequate notice of his claim because he does not identify a facially neutral policy let alone compare its different effect on homosexual and heterosexual employees. *See Malone v. New York Pressman's Union No. 2*, No. 07 Civ. 9583(LTS), 2011 WL 2150551, at *7 (S.D.N.Y. May 31, 2011) (dismissing a dispa-

rate impact claim under Title VII and noting "[t]he basis for a successful disparate impact claim involves a comparison between two groups—those affected and those unaffected by the facially neutral policy") (internal quotation marks omitted).

**9.** In his amended complaint, plaintiff referred to what appeared to be a separate complaint that he had lodged in 1996 regarding Candelario. *See* Am. Compl. 8, 9. However, in his opposition papers, plaintiff clarified that he had mistakenly referenced 1996 in place of 2006. *See* Opp'n 10–11.

(iii) Candelario embarrassed plaintiff in meetings, *see id.* at 8; (iv) in 2009, Candelario (and Vucetovic) ordered a summer intern not to accept work from plaintiff, *see id.;* (v) Candelario misled plaintiff regarding the supervisory nature of an open position, *see* Opp'n 11; (vi) Candelario gave plaintiff a bad performance review, *see id.;* (vii) Candelario responded to an inquiry from plaintiff about a pay raise by promising to investigate but failed to ultimately respond to him regarding the raise, which plaintiff received, *see id.;* (viii) plaintiff asked Candelario for a scanner, Blackberries, and a briefcase, and though she refused, other personnel at DPW provided the items, *see id.;* (ix) "[o]nce in a meeting," Candelario told plaintiff, " 'New York State [l]aw says I can fire you at will,' " *see id.* at 32; and (x) Candelario did not train plaintiff in how to electronically file court documents. *See id.* at 9. Defendants seek to dismiss plaintiff's retaliation claim in its entirety.

 "[T]o establish a prima facie case of retaliation, an employee must show [1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." *Richardson v. Comm'n on Human Rights & Opportunities,* 532 F.3d 114, 123 (2d Cir.2008). "At this stage, plaintiff need not establish [such] a prima facie case of discrimination, but must nonetheless allege evidence stating a plausible claim of retaliation." *Holland v. City of New York,* No. 10 Civ. 2525(PKC), 2011 WL 6306727, at *9 (S.D.N.Y. Dec. 16, 2011) (dismissing retaliation claims brought under the NYSHRL and NYCHRL).

 Even assuming, *arguendo,* that plaintiff has plausibly alleged that he engaged in a protected activity and subsequently suffered adverse employment actions, he has (again) failed to plausibly allege a causal nexus. There is literally nothing to connect his complaint about Candelario in 2006 and the self-described retaliatory actions aside from the fact that plaintiff groups these actions underneath the heading of "retaliation" in his amended complaint and opposing papers. However, the lone date of 2009 that plaintiff provides in connection with a seemingly trivial affront is so distant from 2006 that the intervening time period "suggests, by itself, no causality at all." *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 274, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (20 months between protected activity and adverse employment action). In the context of retaliation, even a span of four months is alone insufficient to support an inference of causation. *See Dixon v. Int'l Fed'n of Accountants,* 416 Fed.Appx. 107, 110 (2d Cir. 2011). Here, after three pleading attempts, there is simply no basis to infer either when the alleged retaliatory acts occurred or that the actions alleged were in fact retaliatory. Thus, plaintiff's retaliation claim is not facially plausible and is dismissed in its entirety.

**g. Failure to Promote under Title VII, the NYSHRL, and the NYCHRL**

In his amended complaint, plaintiff placed a check mark beside "[f]ailure to promote" as among the discriminatory conduct of which he complained. Am. Compl. 9. In his amended charge to the EEOC, plaintiff appears to provide a basis for this claim, explaining that he had sought the position for which Candelario was hired. In particular, plaintiff asserts that he said to Jacobs, " 'why don't you just give me the job,' " to which Jacobs responded, " 'Donovan[,] your personality would not be conducive for the job because if one of the attorneys (at DPW) was lying

on you, you would want to stand up for yourself instead of walking away knowing that you are right.'" *Id.* at 25–26. In his opposing papers, plaintiff makes clear that his claim is not only premised on the failure to promote him to the position held by Candelario but also that now held by Vucetovic, for which Candelario failed to consider him, despite the fact that "a few DPW attorneys had petitioned [her] to consider [him]." Opp'n 12.[10] Defendants seek to dismiss plaintiff's failure-to-promote claim in its entirety.

In order to sustain a *prima facie* failure-to-promote claim under Title VII, a "plaintiff must allege that (1) [he] is a member of a protected class; (2) [he] applied and was qualified for a job for which the employer was seeking applicants; (3) [he] was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir.1998) (affirming dismissal of complaint) (internal quotation marks omitted). *See also Deshpande v. TJH Med. Servs., P.C.*, 52 A.D.3d 648, 651, 861 N.Y.S.2d 697, 700 (2d Dep't 2008) (noting failure-to-promote claims under the NYSHRL and NYCHRL are analyzed according to the same standards as Title VII and dismissing NYSHRL and NYCHRL failure-to-promote claims because plaintiff "did not allege any specific instance where the [defendants] refused to promote him to a position for which he applied and for which he was qualified"). While a plaintiff need not establish a *prima facie* case at this initial stage, he must plead facts that render his claim facially plausible, and a "plaintiff['s] claim[ ] must be dismissed if

[it] fail[s] to demonstrate that [the] plaintiff[ ] 'applied for a specific position.'" *Leung v. New York Univ.*, No. 08 Civ. 5150(GBD), 2010 WL 1372541, at *4 (S.D.N.Y. Mar. 29, 2010) (quoting *Gupta v. New York City Sch. Const. Auth.*, 305 Fed. Appx. 687, 689 (2d Cir.2008)).

Here, plaintiff does not allege that he applied for either one of the two positions that Candelario and Vucetovic ultimately filled. Even if plaintiff's statement to Jacobs is considered sufficient to constitute an application, there are simply no facts from which to infer that plaintiff was qualified for the position or any reason to believe that Jacobs's rejection of his overture reflected a discriminatory bias. To the contrary, plaintiff himself repeats in his pleadings the non-discriminatory basis that Jacobs allegedly provided to plaintiff for why he was unfit for the position: "your personality would not be conducive for the job."

Accordingly, plaintiff's failure-to-promote claim is dismissed in its entirety.

### h. Race Discrimination under Title VII, the NYSHRL, and the NYCHRL

Finally, a generous reading of plaintiff's amended complaint suggests that he asserts race discrimination against the defendants. Aside from placing a check mark beside "race" as a basis on which he was discriminated, *see* Am. Compl. 10, defendant states in his amended complaint, "[u]pon information and belief there was an article in the [l]aw [j]ournal years ago from a DPW partner that stated in part that [b]lack attorneys at DPW are not given meaningful tasks but given mostly [p]ro [b]ono work to do." *Id.*

---

**10.** Plaintiff discusses this episode in his amended charge to the EEOC, stating that when a *pro bono* coordinator began to explain to him that she had attempted to persuade Candelario to hire plaintiff for the position that Vucetovic ultimately filled, he stopped her before she went any further and rather colorfully asserted, "Osama Bin Laden has a better chance being duly elected President of the United States.'" Am. Compl. 30.

at 4. This allegation and similar asides scattered throughout his pleadings in no way support an inference that plaintiff was discriminated against because of his race. "It is axiomatic that mistreatment at work … is actionable … only when it occurs because of an employee's … protected characteristic." *Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir.2001). As defendants observe, plaintiff does not challenge their motion to dismiss his claim of race discrimination anywhere in his opposing papers. Accordingly, we dismiss his race discrimination claim in its entirety.

### 3. Leave to Further Amend the Amended Complaint

 In his opposing papers, plaintiff seeks leave to further amend his amended complaint. *See* Opp'n 2, 8, 15. As stated earlier, "leave to amend a complaint, particularly one of a *pro se* litigant, should be liberally granted." *Schwamborn v. Cnty. of Nassau,* 348 Fed.Appx. 634, 635 (2d Cir.2009) (citing *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003)). *See also* Fed.R.Civ.P. 15(a)(2) ("[t]he court should freely give leave when justice so requires"). "Nonetheless, a motion to amend should be denied if there is an 'apparent or declared reason—such as … bad faith or … futility of amendment.'" *Dluhos v. Floating and Abandoned Vessel, Known as New York,* 162 F.3d 63, 69 (2d Cir.1998) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) and affirming denial of *pro se* plaintiff's motion to amend). The decision whether to permit a plaintiff to amend his pleadings is committed to a district court's "sound discretion." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007).

 First, we find that plaintiff seeks to further amend his amended complaint in bad faith. Throughout his amended complaint and opposing papers, plaintiff has singled out various individuals, including both individual defendants and non parties, as targets for attacks that are typically based on rumor, are often unrelated to any conceivable claim of employment discrimination, and focus on the other individual's alleged sexual orientation, promiscuity, dishonesty, or health, among other characteristics. *See, e.g.,* Am. Compl. 31. Plaintiff has similarly engaged in vicious attacks against DPW as an institution. *See, e.g., id.* at 6. From his submissions to the Court since he filed his amended complaint, it is apparent that plaintiff has continued to pursue two avenues of his invective with particular determination: ridiculing employees of DPW for their alleged sexual orientation or their alleged infection with sexually-transmitted diseases. *See, e.g.,* Opp'n 9.[11] In his opposing papers, plaintiff responded to defendants' claim that they believe his "'pleadings … are obviously calculated to embarrass and harass his former fellow employees.'" Opp'n 1 (quoting Br. 2). While asserting that "[t]his is so far from the truth," plaintiff continues to state, "what is the truth is that the employees who defendants refer[] to are anxiously awaiting all of [p]laintiff's writings and hoping with bated breath that [p]laintiff does not mention them by name

---

**11.** For instance, in a letter dated February 2, 2012, plaintiff requested the Court to approve subpoenas that directed nine (9) individual defendants and non-parties to provide the Court with medical records related to sexually-transmitted diseases. In a motion filed on February 17, 2012, defendants' counsel, on behalf of both the individual defendants and non-parties named in these subpoenas, moved to quash the subpoenas or, in the alternative, issue a protective order because the subpoenas are premature, irrelevant to plaintiff's claims of employment discrimination, and intended to harass and embarrass. *See* Mot. to Quash 4. On February 27, 2012, plaintiff filed opposing papers to this motion. The motion to quash is granted.

as a participant in homosexual activities." *Id.* at 1–2. Broadening the net of his scurrilous attacks, plaintiff now suggests that various male employees of this courthouse are also engaged in such activities and have solicited plaintiff with offers of sex and requests leave to file a further amended complaint. *See id.* at 2. That request is denied.

Second, we also find that in connection with the only other place in his opposing papers where plaintiff seeks leave to amend with regard to a particular set of allegations that such amendment would be futile. "Where a plaintiff inadequately pleads a claim and cannot offer additional substantive information to cure his deficient pleading, granting leave to replead would be futile." *Blasini v. City of New York*, No. 11 Civ. 3022(SAS), 2011 WL 6224605, at *4 (S.D.N.Y. Dec. 14, 2011). In his opposing papers, plaintiff introduces the fresh allegations in support of his failure-to-compensate claim that on "numerous occasions" he received telephone calls from employees of DPW while he was at home informing him that a taxi was en route to him with a package, which required him to await the package's arrival for an indeterminate time period for which he was not compensated. *See* Opp'n 8. In light of these allegations, plaintiff "begs" to amend his amended complaint. *Id.* As discussed, *see supra* pgs. 410–11, these allegations, which we have already treated as further amending the amended complaint, fail to state a claim on which relief can be granted and so provide no basis for granting leave to amend, particularly when it is considered that plaintiff has effectively had three opportunities to assert a failure-to-compensate claim.

### B. Motion to Strike

#### 1. Standard of Review

Under Rule 12(f) of the Federal Rules of Civil Procedure, a "court may strike from a pleading … any … immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In considering a motion to strike such material, we are mindful that "it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible" and that we "should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976). *See also Slue v. N.Y. Univ. Med. Ctr.*, 409 F.Supp.2d 349, 374 (S.D.N.Y. 2006) ("[m]otions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute") (quoting *Zinaman v. USTS N.Y. Inc.*, 798 F.Supp. 128, 135 (S.D.N.Y.1992)). "An allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action." 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.37[3] (3d ed.2010). " 'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Id.* "A defendant moving to strike portions of a complaint must state with particularity the grounds for [its] motion and set forth the nature of relief or type of order sought." *Arias–Zeballos v. Tan*, No. 06 Civ. 1268(GEL), 2006 WL 3075528, at *9 (S.D.N.Y. Oct. 26, 2006) (internal quotation marks omitted). *See also Lipsky*, 551 F.2d at 894 ("if the motion [to strike] is granted at all, the complaint should be pruned with care").

#### 2. Striking of Immaterial, Impertinent, and Scandalous Matter from the Amended Complaint

Defendants identify nineteen (19) discrete allegations in the amended complaint

that they assert are "immaterial, impertinent and/or scandalous." Br. 13. *See also* Asen Aff. Exs. B–0 (highlighting the identified allegations). Plaintiff responds to the motion to strike in a single sentence by citing the proposition that such motions are generally disfavored. *See* Opp'n 16. He does not otherwise address the motion to strike or argue why any of the allegations are not immaterial, impertinent, or scandalous.

■ After reviewing the nineteen (19) allegations, we find that in some cases defendants seek to strike too much matter from the amended complaint but also that in the remainder of cases their motion is well founded. Simply because a claim is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) does not mean that allegations in support of that claim may as a matter of course be struck as immaterial, impertinent, or scandalous. *See Barcher v. New York Univ. Sch. of Law,* 993 F.Supp. 177, 181 (S.D.N.Y.1998) (granting motion to dismiss sexual harassment and retaliation claims and denying motion to strike allegations regarding sexual harassment). The touchstone remains whether no evidence in support of an allegation would be admissible, which "is simply not the case" with regard to some of the allegations identified by defendants. *Id.* We will briefly address subsets of the allegations, explaining our rationale in turn.

■ The allegations of Vucetovic's sexual harassment, though crude, are plainly relevant to plaintiff's unmeritorious claim that she sexually harassed him. However, allegations regarding Vucetovic's health and that of other women alongside whom plaintiff worked in the Managing Attorney's Office are wholly irrelevant to any of his claims, a fact that is clear from the manner in which plaintiff introduces these claims as taunting asides. *See Arias–Zeballos,* 2006 WL 3075528, at *9

(striking allegations having "no conceivable relationship to the merits of any of the claims"). Thus, the following allegations and portions of allegations, as numbered in defendants' moving papers, are properly struck as immaterial and scandalous: 1. ("[i]t is also suspected … (discovery will prove this)"); 1a. ("who would act … about Vucetovic"); 2.; and 2a. *See* Br. 13–14.

■ The allegations regarding a purported article about DPW's treatment of black attorneys are relevant, albeit quite remotely, to plaintiff's unmeritorious claim of discrimination on the basis of his race. *See* Br. 14 (allegation 4.). The same is true of allegations regarding a purportedly homosexual colleague's wrongdoing and service on an inmate on Riker's Island as to plaintiff's unmeritorious claims of discrimination on the basis of his sexual orientation and gender, respectively. *See id.* at 14 (allegations 6., 6a., and 10.).

■ However, allegations regarding the sexual orientation of a partner at DPW, weekend rendezvous between attorneys at DPW, plaintiff's efforts to secure the excusal of DPW employees from jury service, the immigration status of a colleague, communications about a *pro bono* matter, and the consensual sexual activities of DPW employees are all so tangential to plaintiff's claims of workplace discrimination that evidence supporting them would not be admissible. *See Parrish v. Sollecito,* No. 01 Civ.5420 (VM), 2002 WL 1072227, at *2 (S.D.N.Y. May 28, 2002) (granting motion to strike because "the allegation is scandalous, as well as impertinent and of extremely unlikely relevance"). Thus, the following allegations and portions of allegations, as numbered in defendants' moving papers, are properly struck as immaterial and scandalous: 3.; 3a.; 5.; 5a.; 7.; 7a. ("[p]art of the function … I think he lost confidence in me."); 9.; 11.; 8.; and 12. *See* Br. 14–15.

418

## IV. Conclusion

For the reasons stated above, defendants' motions are granted in part and denied in part. The parties are directed to confer and submit to the Court a proposed schedule for discovery on the remaining claims of sexual harassment brought against DPW, Candelario, Jones, and Grant that relate to the specific incidents of which plaintiff has complained occurring from 2004 onwards regarding Jones and otherwise in 2008 and 2009.

Finally, there are a number of observations and rulings in the foregoing Memorandum and Order that reflect the Court's views as to the inappropriateness of the irrelevant and personally intrusive comments in plaintiff's submissions. These observations and rulings have now put plaintiff squarely on notice, and the Court trusts that he will conduct himself properly in this case going forward.