Collette HENRY, Plaintiff,

v.

NYC HEALTH & HOSPITAL CORP., Lieutenant John Arena, individually and in his personal capacity, Captain Ronnell Boylan, in his individual and official capacity, John & Jane Does 1–10, individually and in their personal capacity, XYZ Municipal Corps. & Entities 1–10, Defendants.

No. 13 Civ. 6909(PAE).

United States District Court, S.D. New York.

Signed March 10, 2014.

Shawn Matthew Clark, New York City Law Department, New York, NY, for Defendants.

*OPINION & ORDER*

PAUL A. ENGELMAYER, District Judge:

Plaintiff Collette Henry ("Henry"), an employee of the New York City Health & Hospital Corporation ("HHC"), brings claims of discrimination and retaliation against HHC and several former supervisors (collectively, "defendants"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code § 8–101 *et seq.* ("NYCHRL"). Henry alleges, *inter alia*, that she was discriminated against on the basis of her race and gender, and retaliated against for having engaged in a protected act. Defendants now move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion to dismiss Henry's Title VII, § 1981, and NYSHRL claims is granted; and the Court declines to exercise supplemental jurisdiction as to Henry's NYCHRL claims.

## I. Background [1]

### A. Facts of the Case

Henry is an African–American woman with blonde hair. Am. Compl. ¶¶ 3, 8. At all relevant times, she was employed by HHC as a police officer. *Id.* ¶¶ 7, 9. Lieutenant John Arena ("Arena") and Captain

Aymen A. Aboushi, The Aboushi Law Firm, New York, NY, for Plaintiff.

1. The facts that form the basis of this Opinion are drawn from the Amended Complaint, Dkt. 10 ("Am. Compl."). On a motion to dismiss, the Court accepts all factual allegations in the

Amended Complaint as true. *See Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999).

Ronnel Boylan ("Boylan"), also HHC employees, were her supervisors. *Id.* ¶¶ 5, 6, 10.

Henry alleges that, during her employment, "Arena made several racially charged and discriminatory remarks," and on "several occasions" "publicly mock[ed] [her] hair color and skin tone." *Id.* ¶¶ 11, 38. Specifically, Henry alleges that "[o]n one occasion, during roll-call and in front of other police officers, Defendant Arena publicly admonished [her] while she was sitting in another room because he claimed that [her] hair and skin tone did not match." *Id.* ¶ 12. Arena "then proceeded to remove [her] from roll call and send her home ... because her skin tone did not match her hair." *Id.* ¶ 16.

Shortly thereafter, Henry "complained to other supervisors of Arena's conduct." *Id.* ¶ 17. Following these complaints, Arena "refused to grant Plaintiff overtime work, despite the fact that she was next on the list for overtime." *Id.* ¶ 21. Thereafter, "Arena continued to interfere with [Henry's] job responsibilities, including refusing her overtime, sending her home, and instructing other commanders to not work with her," *Id.* ¶ 25, as well as "giv[ing] her worse assignments than others" and "undesirable shifts normally relegated to newer hires," *Id.* ¶ 37; *see also id.* ¶ 32. Arena and Boylan also "concocted a scheme to have [Henry] written up on

false charges of sleeping at work." *Id.* ¶ 27; *see also id.* ¶¶ 28, 35, 41.

## B. Procedural History

On September 30, 2013, Henry filed the Complaint in this action. Dkt. 1. It alleged that defendants [2] discriminated against her on the basis of her "race, color, gender, and ethnicity," subjected her to a hostile work environment, and retaliated against her for complaining about that discrimination, in violation of Title VII. On December 16, 2013, defendants filed a motion to dismiss pursuant to Rule 12(b)(6). Dkt. 7.

On January 6, 2014, Henry filed the Amended Complaint. Dkt. 10. The Amended Complaint drops Henry's earlier hostile work environment claim, but leaves her discrimination and retaliation claims intact.[3] The Amended Complaint also adds violations of § 1981, NYSHRL, and NYCHRL. On November 18, 2013, defendants submitted a motion to dismiss the Amended Complaint, Dkt. 11, and a supporting memorandum of law, Dkt. 12 ("Def. Br."). Defendants argue, *inter alia,* that the Amended Complaint fails to state discrimination and retaliation claims upon which relief can be granted. On January 30, 2014, Henry submitted a memorandum of law in opposition to that motion. Dkt. 13 ("Pl. Br."). On February 6, 2014, de-

---

**2.** Henry named the City of New York as a defendant in her initial Complaint, but omits the City as a defendant in the Amended Complaint. *See* Dkt. 1, 10.

**3.** The Amended Complaint makes passing reference to defendants' alleged creation of a hostile work environment, *see* Am. Compl. pg. 1 & ¶ 39, but Henry argues vehemently in her brief that she did not intend to assert a hostile work environment claim in the Amended Complaint, *see* Pl. Br. 7 ("Plaintiff has not asserted a hostile work environment claim."). The Court thus treats the Amended Complaint

as not asserting such a claim. The Court notes, however, that if Henry had asserted such a claim, the Amended Complaint fails to "plead facts sufficient to support the conclusion that she was faced with 'harassment ... of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse,'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir.2007) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir.2003) (alteration in *Patane* )), and thus would fail to state a cognizable hostile work environment claim.

fendants filed a reply. Dkt. 14 ("Def. Reply Br.").

## II. Applicable Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558, 127 S.Ct. 1955.

In considering a motion to dismiss, a district court "must accept as true all well-pleaded factual allegations in the complaint, and 'draw[ ] all inferences in the plaintiff's favor.'" *Allaire Corp. v. Okumus,* 433 F.3d 248, 249–50 (2d Cir.2006); *see also Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir.2010). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's

*factual* allegations must be enough to raise a right to relief above the speculative level, *i.e.,* enough to make the claim plausible." *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir.2010) (citing *Twombly,* 550 U.S. at 555, 570, 127 S.Ct. 1955) (internal quotation marks omitted) (emphasis in *Arista Records); accord Goldin v. Smith & Nephew, Inc.,* No. 12 Civ. 9217(JPO), 2013 WL 1759575, at *2 (S.D.N.Y. April 24, 2013).

## III. Discussion

 Henry claims that defendants discriminated against her on the basis of race and gender, and retaliated against her for complaining about this discrimination. As noted, Henry brings claims under federal law (Title VII and § 1981), state law (NYSHRL), and city law (NYCHRL). The Court analyzes the substantive claims brought under Title VII and NYSHRL law together, because the substantive standards for liability under these sources of law are coextensive.[4] The Court will address Henry's § 1981 claim and city-law claims separately.

### A. Title VII & NYSHRL Discrimination Claims

 Title VII makes it unlawful for an employer "to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).[5] A *prima facie* case of employment discrimina-

---

4. "[C]laims brought under [NYSHRL] are analytically identical to claims brought under Title VII." *Rojas v. Roman Catholic Diocese of Rochester,* 660 F.3d 98, 107 n. 10 (2d Cir. 2011) (citation omitted). Accordingly, as discussed *infra* Part III.D, the Court exercises supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367.

5. Individuals are not subject to liability under Title VII. *See Rozenfeld v. Dep't of Design &*

*Const. of City of N.Y.,* 875 F.Supp.2d 189, 201 (S.D.N.Y.2012). Accordingly, Henry cannot state Title VII claims against the individual defendants. Section 1981 claims, however, can carry individual liability, provided the plaintiff can show the personal involvement of the individual defendant. *See Evans v. Port Auth. of N.Y. & N.J.,* 192 F.Supp.2d 247, 280 & nn. 208, 209 (S.D.N.Y.2002).

tion under Title VII requires proof that: "(1) plaintiff is a member of a protected class; (2) plaintiff was qualified for his or her position; (3) plaintiff was subjected to an adverse employment action; and (4) the adverse employment action took place under circumstances giving a rise to an inference of discrimination based on plaintiffs membership in the protected class." *El–Din v. N.Y.C. Admin. for Children's Servs.*, No. 12 Civ. 1133(PAE), 2012 WL 3839344, at *4 (S.D.N.Y. Sept. 5, 2012) (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir.2010)). The same standard applies to employment discrimination claims under the NYSHRL. *See Simmons v. Akin Gump Strauss Hauer & Feld, LLP*, 508 Fed.Appx. 10, 13 (2d Cir.2013); *Pilgrim v. McGraw–Hill Cos., Inc.*, 599 F.Supp.2d 462, 468 (S.D.N.Y.2009).

 To survive a motion to dismiss, "plaintiffs alleging employment discrimination need not plead a *prima facie* case." *Munoz–Nagel v. Guess, Inc.*, No. 12 Civ. 1312(ER), 2013 WL 1809772, at *4 (S.D.N.Y. Apr. 30, 2013). However, the elements of the *prima facie* case "provide an outline of what is necessary to render a plaintiff's ... claims for relief plausible." *Kassman v. KPMG LLP*, 925 F.Supp.2d 453, 461 (S.D.N.Y.2013) (internal quotation marks and alterations omitted); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Thus, courts " 'consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiffs claim and the grounds on which it rests.' " *Wilson v. N.Y.C Dep't of Corr.*, No. 11 Civ. 9157(PAE), 2013 WL 922824, at *4 (S.D.N.Y. Mar. 8, 2013), *reconsideration denied*, 2013 WL 1430768 (S.D.N.Y. Apr. 9, 2013) (quoting *Murphy v. Suffolk Cnty. Cmty. Coll.*, No. 10 Civ.

0251(LDW)(AKT), 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011)).

Henry alleges that she was subject to discrimination on the basis of race and gender. As to both sets of claims, the first two elements of the *prima facie* case are not in dispute: The Amended Complaint fairly alleges that Henry is a member of a protected class and was qualified for her position. The Court will address the two disputed elements—adverse employment action and discriminatory intent—in turn.

### 1. Adverse Employment Action

 To constitute an adverse employment action in the context of a discrimination claim, an action must cause "a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir.2008) (internal quotation marks and emphasis omitted); *accord Patane*, 508 F.3d at 112. "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Mathirampuzha*, 548 F.3d at 78 (quoting *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir.2004)).

Henry points to several purportedly adverse employment actions she suffered because of her race and/or gender. She alleges that defendants (1) on one occasion, removed her from the roll call and sent her home; (2) instructed commanders to not work with her; (3) refused to grant her overtime work; (4) gave her undesirable assignments and shifts; and (5) wrote her up on false charges of sleeping at

work.[6] *See* Am. Compl. ¶¶ 12, 16, 21, 25, 27, 28, 32, 35, 37, 38, 41. None of these allegations, however, rises to the level of an adverse employment action.

First, the Amended Complaint does not plead facts indicating that, as a result of her having been removed from the roll call and sent home on a single occasion, Henry suffered any materially adverse change in the conditions of her employment. This incident is properly classified as a mere inconvenience or embarrassment: Henry does not allege that she was docked pay on that particular day, or that any disciplinary proceeding followed. Without facts indicating an "attendant negative result," *Gutierrez v. City of New York*, 756 F.Supp.2d 491, 506 (S.D.N.Y.2010), an allegation of being sent home from work cannot constitute an adverse employment action, *see Galabya v. New York Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000) ("To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." (internal quotation omitted)); *Castro v. N.Y.C. Bd. of Educ. Pers.*, No. 96 Civ. 6314(MBM), 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998) ("[A]lthough reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions.").

The Amended Complaint similarly fails to allege facts rendering plausible the inference that Arena's "instructing other commanders to not work with her," Am. Compl. ¶ 25, was "accompanied by a negative change in the terms and conditions of [her] employment," *Morris v. Lindau*, 196 F.3d 102, 113 (2d Cir.1999). The Amended Complaint does not allege that, as a result, Henry was denied opportunities for career advancement, or indeed that she suffered any career impediment whatsoever. Thus, the Amended Complaint fails to allege an adverse employment action with respect to this conduct. *See Miksic v. TD Ameritrade Holding Corp.*, No. 12 Civ. 4446(AJN), 2013 WL 1803956, at *4 (S.D.N.Y. Mar. 7, 2013) (allegation of being ostracized and isolated at work "is [not] sufficient to constitute an adverse action absent an accompanying demotion, reassignment, or loss of responsibility, salary, or fringe benefits" (internal quotation marks omitted)); *James v. Countrywide Fin. Corp.*, 849 F.Supp.2d 296, 310 (E.D.N.Y.2012) (dismissing complaint as to certain purported adverse employment actions where allegations did not describe "a materially adverse change in the terms and conditions of plaintiff's employment" (internal quotation marks and alteration omitted)).

Nor does the vague allegation that Henry was denied overtime rise to the

---

6. The Amended Complaint once obliquely refers to "plaintiff's discharge from employment," Am. Compl. ¶ 56, but it is unclear whether this one-time reference is meant as an allegation of an adverse employment action. Henry does not mention this purported discharge even once in her brief, let alone argue that it constitutes a material adverse change in the conditions of her employment. Because the single reference to discharge is in the context of Henry's NYSHRL and NYCHRL disparate treatment claims, the Court does not consider this allegation in connection with her Title VII and § 1981 discrimination claims. In any event, the allegation of discharge here is vague and non-specific; standing alone, it cannot support Henry's discrimination claims. And even if the Amended Complaint did plausibly allege an adverse employment action with respect to Henry's "discharge from employment," her discrimination claims would still fail because the Amended Complaint fails to plausibly allege that any such discharge was *because of* race or gender, for the reasons discussed *infra* Part III.A.2.

level of an adverse employment action. Courts in this Circuit have found that the denial of overtime, where accompanied by a loss in compensation or other material harm, may constitute an adverse employment action. *See Aiello v. Stamford Hosp.*, No. 09 Civ. 1161(VLB), 2011 WL 3439459, at *12 (D.Conn. Aug. 8, 2011) (collecting cases); *see also Lee v. City of Syracuse*, 603 F.Supp.2d 417, 433 (N.D.N.Y.2009) ("allocation of overtime could qualify as an adverse action because of the loss of an opportunity for a higher salary"). But Henry fails to allege facts plausibly indicating that she suffered any material detriment as a result of being denied overtime, such as opportunities for career advancement. Her conclusory allegation that she was denied overtime, without more, is insufficient to substantiate an adverse employment action. *See Hernandez v. City of New York*, No. 11 Civ. 3521(SJ), 2013 WL 593450, at *3 (E.D.N.Y. Feb. 12, 2012) (plaintiff failed to plausibly allege an adverse employment action with respect to loss of overtime because plaintiff "fail[ed] to provide any facts to support his allegation that being placed on desk duty has materially diminished his terms of employment"); *cf. Aiello*, 2011 WL 3439459, at *12 (in summary judgment context, plaintiff failed to show "that denial of overtime resulted in material harm to his professional growth or career advancement," and thus failed to establish an adverse employment action).

■ The same is true for Henry's allegations regarding changes to her work schedule and assignments. Under certain circumstances, the receipt of undesirable assignments may rise to the level of an adverse employment action. *See, e.g., Feingold v. New York*, 366 F.3d 138, 152–53 (2d Cir.2004) (plaintiff's receipt of "disproportionately heavy workload" constitutes a materially adverse employment ac-

tion). But, as with the denial of overtime, the receipt of undesirable assignments must be accompanied by a material detriment to an employee's working conditions to constitute an adverse employment action. *See Hill v. Rayboy–Brauestein*, 467 F.Supp.2d 336, 352 (S.D.N.Y.2006) ("change in job responsibilities" and "underutilization of Plaintiff's skills" not adverse employment actions unless "accompanied by materially adverse changes in employment, such as demotion or loss of wages"). The receipt of undesirable assignments, without more, amounts to nothing more than a "mere inconvenience," not a "materially adverse change in the terms and conditions of employment," *Sanders*, 361 F.3d at 755. *See Smalls v. Allstate Ins. Co.*, 396 F.Supp.2d 364, 370 (S.D.N.Y. 2005) ("receiving unfavorable schedules or work assignments ... do[es] not rise to the level of [an] adverse employment action ... because [it does] not have a material impact on the terms and conditions of Plaintiffs employment").

■ The Amended Complaint vaguely alleges that defendants gave Henry "worse assignments" and "undesirable shifts normally relegated to newer hires," Am. Compl. ¶ 37, but fails to plead facts indicating that any such actions materially changed Henry's working conditions in any way. Thus, Henry has failed to allege an adverse employment action in connection with the changes in her work schedule. *See Grant v. N.Y. State Office for People with Developmental Disabilities*, No. 12 Civ. 4729(SJF), 2013 WL 3973168, at *7 (E.D.N.Y. July 30, 2013) (dismissing complaint because "[t]he only adverse employment action that plaintiff alleges ... was his assignment to more onerous work assignments" and allegations of "unfair work assignments, without more, do not amount to adverse employment actions because they are not materially adverse changes in

the terms and conditions of the plaintiff's employment" (internal quotation marks and brackets omitted)); *cf. Albuja v. Nat'l Broadcasting Co. Universal, Inc.*, 851 F.Supp.2d 599, 609 (S.D.N.Y.2012) (in summary judgment context, allegation that plaintiff was given undesirable night shift assignment not adverse employment action because plaintiff "has not asserted · that working night shifts caused any diminution in his compensation or job responsibilities").

 Henry also fails to allege an adverse employment action with respect to the alleged manufacturing of charges against her. The law in this Circuit is clear that the threat of disciplinary action, without more, does not constitute an adverse employment action. *See Honey v. Cnty. of Rockland*, 200 F.Supp.2d 311, 320 (S.D.N.Y.2002) (noting that although "[a] reprimand can constitute an adverse employment action," "threats of disciplinary action ... do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation"); *see also Bowles v. N.Y.C. Transit Auth.*, Nos. 00 Civ. 4213, 03 Civ. 3073(BSJ)(MHD), 2006 WL 1418602, at *10 (S.D.N.Y. May 23, 2006). Here, Henry alleges that defendants "wr[ote] [her] up on false charges of sleeping at work," Am. Compl. ¶ 27, but the Amended Complaint nowhere alleges that she received any punishment as a result of these purportedly false charges, let alone that such punishment "affected her compensation, promotion opportunities, or any other term, privilege or condition of her employment," *Honey*, 200 F.Supp.2d at 321 (citing *Slinkosky v. Buffalo Sewer Auth.*, No. 97 Civ. 0677E (SR), 2000 WL 914118, at *8 (W.D.N.Y. June 29, 2000)).

Thus, the Amended Complaint has failed to allege facts plausibly indicating that Henry suffered an adverse employment action.

**2. Discriminatory Intent**

Henry also fails to allege facts plausibility indicating that any conduct rising to the level of an adverse employment action was *because of* race or gender.

 The law in this Circuit is clear that the *"sine qua non"* of a Title VII discrimination claim is that "the discrimination must be *because of* [a protected characteristic]." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir.2007) (internal quotation marks omitted); *see Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir.2001) ("[M]istreatment at work ... is actionable under Title VII only when it occurs *because of* an employee's sex, or other· protected characteristic." (emphasis added)); *Acosta v. City of New York*, No. 11 Civ. 856(KBF), 2012 WL 1506954, *4 (S.D.N.Y. Apr. 26, 2012) ("[T]he *sine qua non* of a race-based discrimination or retaliation claim is that discrimination or retaliation was *because of race"*). The same is true for claims under the NYSHRL. *See Anderson v. Davis Polk & Wardwell LLP*, 850 F.Supp.2d 392, 407 (S.D.N.Y.2012); *Bermudez v. City of New York*, 783 F.Supp.2d 560, 576 (S.D.N.Y.2011).

The Court will address separately Henry's allegations of race-based and gender-based discriminatory intent.

**a. Race–Based Discrimination**

Even taking the allegations in the Amended Complaint as true and drawing all reasonable inferences in Henry's favor, the Amended Complaint fails to allege that any of defendants' actions, save Arena's racially insensitive comments, were motivated by racial animus.

 Henry first alleges that, in sending her home from work, denying her overtime, and giving her undesirable

shifts, defendants subjected her to disparate treatment on the basis of race. *See* Am. Compl. ¶ 29 ("Caucasian employee[s] are not subject to any of the aforementioned conduct."). "A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably," but "[i]n order to make such a showing, the plaintiff must compare herself to employees who are 'similarly situated in all material respects.'" *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir.1999) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir.1997)); *see also Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir.2003); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir.2000). " '[S]imilarly situated in all material respects does not mean all respects generally, but rather sufficiently similar 'to support at least a minimal inference that the difference of treatment may be attributable to discrimination.'" *Hernandez v. City of New York*, No. 11 Civ. 3521(SJ)(RER), 2013 WL 593450, at *4 (E.D.N.Y. Feb. 13, 2013) (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir.2001)); *accord Deras v. MTA*, No. 11 Civ. 5912(RRM)(CLP), 2013 WL 1193000, at *10 (E.D.N.Y. Mar. 22, 2013).

■ Here, the Amended Complaint lacks any factual basis from which one could infer that any Caucasian employee similarly situated to Henry was subject to differential treatment. Henry alleges in general terms that "[her] hair is the same color as several non-black employees," Am. Compl. ¶ 14; but the Amended Complaint is otherwise silent as to these comparators. It fails to describe who these people are, what their responsibilities were, how their workplace conduct compared to Henry's, or how they were treated. Without factual amplification, the generic allegation of dis-

parate treatment related to an unspecified class of Caucasian persons is simply not sufficient to "nudge[ ] [her] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955, and thus is insufficient to support her racial discrimination claim, *see Bhanusali v. Orange Reg'l Med. Ctr.*, No. 10 Civ. 6694(CS), 2013 WL 4828657, at *5 (S.D.N.Y. Aug. 12, 2013) (dismissing disparate treatment claim on the ground that "Plaintiffs' general allegations that misconduct by 'younger and/or white physicians' went without peer review or discipline ... are wholly conclusory, do not specify the individuals involved or the nature of their alleged misconduct, and are thus insufficient to render plausible the inference of discriminatory intent").

The Amended Complaint also alleges that defendants made racially discriminatory comments toward her. Specifically, Henry alleges that Arena stated "that someone with black skin should not have blonde hair," Am. Compl. ¶ 13, and that "Arena then proceeded to remove the Plaintiff from roll call and send her home," *Id.* ¶ 16. The Amended Complaint suggests that Arena may have made similar comments on at least one other occasion, but is not specific as to this point.

■ Allegations of discriminatory comments directed at the plaintiff's racial group are a recognized method of establishing discriminatory intent. *See Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir.1996) (noting that "circumstances that give rise to an inference of discriminatory motive include actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus"); *Williams v. Addie Mae Collins Cmty. Serv.*, No. 11 Civ. 2256(LAP), 2012 WL 4471544, at *2 (S.D.N.Y. Sept. 27, 2012) (identifying "remarks that convey discriminatory animus"

as basis "from which the Court can infer discrimination on the basis of protected status"); *accord Harris v. NYU Langone Med. Ctr.*, No. 12 Civ. 0454(RA)(JLC), 2013 WL 3487032, at *14 (S.D.N.Y. July 9, 2013) (Report & Recommendation), *adopted as modified by* 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013). And the insensitive comment recited by the Amended Complaint does have an undeniable racial overtone. The Amended Complaint, however, fails to allege facts demonstrating that this comment, or the unspecified other racially discriminatory comments to which it alludes, was causally connected to conduct rising to the level of an adverse employment action. The Amended Complaint suggests that Henry was sent home from work at some point after Arena made his purportedly discriminatory comments, but does not clearly specify the length of time between the comment and Henry's being sent home. *See* Am. Compl. ¶ 16 ("Arena then proceeded to remove the Plaintiff from roll call and send her home. He directly referenced Plaintiffs skin tone before sending her home because her skin tone did not match her hair."). Even reading the Amended Complaint to state that the comment immediately preceded Henry's being sent home, Henry, as already noted, has failed to allege facts plausibly indicating that her being sent home on one occasion worked a materially adverse change in the conditions of her employment. Thus, the Amended Complaint lacks facts plausibly linking Arena's comments and an *adverse employment action*. As for the other purported adverse employment actions, the Amended Complaint fails to allege any facts connecting them to Arena's comment regarding Henry's skin tone and hair.

Thus, the Amended Complaint fails to plausibly allege that conduct amounting to an adverse employment action occurred under circumstances evincing discriminato-ry animus. Henry's Title VII and NYSHRL race-based discrimination claims are dismissed.

**b. Gender–Based Discrimination**

In support of her gender-based discrimination claims, Henry relies on essentially the same facts as she recited in support of her race-based discrimination claims. As with the bulk of her race-based claims, Henry fails to plausibly allege that defendants were ever motivated by gender discrimination. Indeed, Henry fails to allege facts plausibility indicating that *any* action on the part of defendants, even if rising to the level of an adverse employment action, was taken *because of gender*. This provides an independently sufficient basis for dismissing her gender discrimination claims.

Henry first alleges that she was subjected to disparate treatment on the basis of gender. *See, e.g., id.* ¶ 31 ("no male employee was sent home from work for not having their skin color match their hair style and/or color"). But Henry's allegations of gender-based disparate treatment are conclusory. First, the Amended Complaint does not allege that any *similarly situated* male employee received more favorable treatment than Henry— the Amended Complaint fails to identify, let alone describe, any purported comparator. *See Anderson*, 850 F.Supp.2d at 407 (allegations of disparate treatment can support a gender discrimination claim, but only if "the alleged comparators are 'similarly situated in all material respects'" (quoting *Sank v. City Univ. of N.Y.*, No. 10 Civ. 4975(RWS), 2011 WL 5120668, at *11 (S.D.N.Y. Oct. 28, 2011))). And even accepting all of Henry's factual allegations as true and drawing all reasonable inferences in her favor, there is simply no basis from which to infer that defendants' treatment of Henry was motivated *by gender*. *See*

*id.* (dismissing gender discrimination claims on the ground that "plaintiff has failed to allege in even conclusory fashion that he and [the purported comparator] were similarly-situated employees"); *Sank,* 2011 WL 5120668, at \*11 ("Absent allegations plausibly suggesting that the male colleagues who purportedly received superior treatment were similarly situated to [plaintiff] in all relevant respects ... [plaintiff]'s conclusory assertions of differential treatment do not permit a plausible inference of gender discrimination.").

 To be sure, Henry points to the comments Arena made regarding her "hair and skin tone," *Id.* ¶ 12; she claims that "Arena meant his remarks to say that black women should not have light colored hair," *Id.* ¶ 15. But this claim as to Arena's state of mind is conclusory. The Amended Complaint alleges no facts rendering plausible the allegation that Arena's alleged comments, however insensitive, were *about gender.* Indeed, although Arena's comments as alleged overtly mention race, as to gender, they are neutral, *see id.* ¶ 13 (Arena "told [Henry] that someone with black skin should not have blonde hair"); *id.* ¶ 20 (Arena "told [Henry] ... that someone with her skin tone and hair color will not be permitted to work under him"). And Henry's " 'mere subjective belief that [s]he was discriminated against because of [her] [gender] does not sustain a [gender] discrimination claim.' " *Potash v. Florida Union Free Sch. Dist.,* 972 F.Supp.2d 557, 589 (S.D.N.Y.2013) (quoting *Gue v. Suleiman,* 10 Civ. 8958(RLE), 2012 WL 4473283, at \*8 (S.D.N.Y. Sept. 27, 2012) (alterations in *Potash)* ). Thus, Arena's comments do not provide a basis from which to infer that defendants' conduct was motivated by gender.

In sum, Henry fails to allege facts sufficient to "connect the dots between the alleged adverse actions and h[er] membership in a protected class." *Acosta,* 2012 WL 1506954, at \*4. Her Title VII and NYSHRL gender discrimination claims must be dismissed.

**B. § 1981 Racial Discrimination Claim**

Henry also restates her racial discrimination claims under § 1981.

 Section 1981 provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 thus "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cnty. of Oneida, N.Y.,* 375 F.3d 206, 224 (2d Cir.2004). Section 1981 discrimination claims are analyzed under the same substantive standard applicable to Title VII discrimination claims. *See White v. Eastman Kodak Co.,* 368 Fed.Appx. 200, 201 & n. 1 (2d Cir. 2010) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *see also De La Pena v. Met. Life Ins. Co.,* 953 F.Supp.2d 393, 409 (E.D.N.Y.2013) ("In analyzing disparate treatment claims under Section 1981, the Court applies the same standards that are used to evaluate a Title VII discrimination claim."); *Hyunmi Son v. Reina Bijoux, Inc.,* 823 F.Supp.2d 238, 242 (S.D.N.Y.2011) ("Employment discrimination claims brought under section 1981 are generally analyzed under the same evidentiary framework that applies to Title VII ... claims.").

For the reasons discussed above, the Amended Complaint fails to plausibly allege an adverse employment action, or a causal connection between racial discrimination and any action rising to the level of

an adverse employment action. *See supra* Part III.A. The allegation that Arena made a racially-charged comment about Henry's skin tone and hair color—the only act with respect to which the Amended Complaint plausibly alleges discriminatory animus—is linked only to Henry's being sent home from work on a single occasion. But, as already noted, Henry failed to allege a material change in the terms and conditions of her employment as a result of being sent home from work. Accordingly, Henry's § 1981 racial discrimination claim too must be dismissed. *See James,* 849 F.Supp.2d at 319 (granting motion to dismiss on ground that "plaintiff has failed to allege a materially adverse change in the terms and conditions of his employment so as to sustain his Section 1981 claim" (internal quotation marks omitted)); *cf. Blythe v. City of N.Y.,* 963 F.Supp.2d 158, 172 (E.D.N.Y.2013) ("Plaintiff has failed to make out a prima facie case because none of the above-cited actions constitutes an adverse employment action. For purposes of a § 1981 ... claim of race discrimination, an adverse employment action is a 'materially adverse change' in the terms and conditions of employment, which is defined as a change in working conditions that is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.' " (citation omitted)).

## C. Title VII & NYSHRL Retaliation Claims

In addition to outlawing outright workplace discrimination, Title VII makes it unlawful for an employer to discriminate against an employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). The statute thus "prohibits an employer from taking 'materially adverse' action against an employee because the employee opposed conduct that Title VII forbids or the employee otherwise engaged in protected activity." *Tepperwien v. Entergy Nuclear Operations, Inc.,* 663 F.3d 556, 567 (2d Cir.2011). Title VII's anti-retaliation provision is designed "to further [the Act's] goal of a workplace free from [unlawful] discrimination," *id.,* "by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees," *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 63, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). A *prima facie* case of retaliation under Title VII requires proof of the following elements: (1) "participation in a protected activity known to the defendant;" (2) "an employment action disadvantaging the plaintiff;" and (3) "a causal connection between the protected activity and the adverse employment action." *Feingold,* 366 F.3d at 159 (internal quotation marks omitted). The same standard applies for retaliation claims under the NYSHRL. *Pilgrim,* 599 F.Supp.2d at 468–69.

Here, the Amended Complaint fails to state a claim for retaliation: Assuming *arguendo* that other elements of retaliation were properly pled, Henry fails to plausibly allege a causal connection between the protected activity and the purported discriminatory treatment.

In a retaliation case, "[c]ausation can be proven either: '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the

plaintiff by the defendant.'" *Galimore v. City Univ. of N.Y. Bronx Comm. Coll.*, 641 F.Supp.2d 269, 288 (S.D.N.Y.2009) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir.2000)). "While the Second Circuit has articulated no 'bright line' rule for when an alleged retaliatory action occurs too far in time from the exercise of a federal right to be considered causally connected, it is well settled that when 'mere temporal proximity' is offered to demonstrate causation, the protected activity and the adverse action must occur 'very close' together.'" *Id.* (internal citations omitted); *see also Giles v. NBC Universal, Inc.*, 10 Civ. 7461(DAB), 2011 WL 4376469, at *3 (S.D.N.Y. Sept. 20, 2011) (when relying on temporal proximity to show causation, "the protected activity and alleged discriminatory treatment must be 'very close[ly]' associated to support an inference of retaliation" (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (alteration in *Giles*))); *Sareen v. Port Auth. of N.Y. & N.J.*, No. 12 Civ. 2823(PAE), 2013 WL 6588435, at *14 (S.D.N.Y. Dec. 16, 2013) (collecting cases).

■■■ The Amended Complaint variously alleges that "[d]efendants retaliated against [Henry] *when* she complained about the unlawful treatment of her," Am. Compl. ¶ 51 (emphasis added), and that defendants did so "*[a]fter* [she] complained and/or the conduct became known to others," *id.* ¶ 27 (emphasis added), but fails to state with even a modicum of specificity when the relevant events occurred. Such conclusory allegations are simply "too vague in nature and non-specific as to time ... to serve as a basis for her retaliation claims." *Winston v. City of New York*, No. 12 Civ. 0395(FB)(VVP), 2013 WL 4516097, at *4 (E.D.N.Y. Aug. 23, 2013) (internal quotation marks omitted); *see*

*also id.* (dismissing retaliation claim because plaintiff's "blanket statement that her demotion took place 'upon return from [a] vacation ... [taken] ... shortly [ ]after [the protected activity]'" was insufficient to show temporal proximity and thus was "insufficient to satisfy *Iqbal's* standards" (alterations in *Winston*)); *Wilson*, 2013 WL 922824, at *4 (granting motion to dismiss on the ground that plaintiff's "allegations are woefully vague, devoid of any particularity, and plead no factual matter that comes close to alleging a plausible case of employment discrimination").

■■■ Henry also appears to allege that causation can be inferred from the fact that she was subjected to disparate treatment. But, as with her discrimination claims, Henry's allegations of disparate treatment are conclusory. In this regard, the Amended Complaint nakedly asserts that "Caucasian employee[s] are not subject to the [purported adverse employment actions]." Am. Compl. ¶ 29. However, as noted, the Amended Complaint lacks factual allegations indicating that these Caucasian employees were similarly situated to Henry or engaged in similar conduct. *See, e.g., Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493–94 (2d Cir.2010) (to establish a claim for disparate treatment, comparator must be "similarly situated to the plaintiff in all material respects" (internal quotation marks omitted)).

The Amended Complaint's remaining allegations regarding retaliation too are conclusory, *see, e.g.*, Am. Compl. ¶ 33 ("Upon information and belief, the manufacturing of charges against [Henry] was in retaliation [for] her complaining about Defendant Arena's conduct."); *id.* ¶¶ 52–53 ("Defendants denied her overtime, gave her undesirable shifts, and brought her up on false charges such as sleeping at her post ... [to] punish[ ] her for speaking out against the unlawful treatment of her."), and thus

fail to satisfy the *Iqbal/Twombly* pleading standard, *see, e.g., Williams v. Calderoni*, No. 11 Civ. 3020(CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012) (dismissing discrimination claim where plaintiff alleged disparate treatment "on information and belief," but "point[ed] to no 'information' that w[ould] render these statements any more than a speculative claim").

Accordingly, Henry's Title VII and NYSHRL retaliation claims must be dismissed.

### D. Supplemental Jurisdiction as to Henry's NYHRL Claims

Having dismissed all of Henry's federal and state discrimination and retaliation claims, the Court must now determine whether to exercise supplemental jurisdiction over her city-law claims. As stated above, the Court addressed Henry's NYSHRL claims in conjunction with her Title VII claims, because the standards of liability under the two statutes are coterminous. The Court, however, has not addressed Henry's NYCHRL claims because the standard for liability under the NYCHRL differs from the Title VII standard. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010).

Federal district courts have supplemental jurisdiction over non-federal law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may, at its discretion "decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has instructed that, in deciding whether to exercise supplemental jurisdiction, a district court should balance the traditional "val-

ues of judicial economy, convenience, fairness, and comity," *CarnegieMellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); and that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well,'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir.1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Although the exercise of supplemental jurisdiction is discretionary, the ordinary case "'will point toward declining jurisdiction over the remaining state-law claims.'" *In re Merrill Lynch*, 154 F.3d at 61 (quoting *Cohill*, 484 U.S. at 350 n. 7, 108 S.Ct. 614).

■ Here, however, the "values of judicial economy, convenience, fairness, and comity," *Cohill*, 484 U.S. at 350, 108 S.Ct. 614, support the exercise of supplemental jurisdiction over Henry's NYSHRL claims. As discussed, the standards of liability are identical under Title VII and the NYSHRL; deciding the state-law claims does not require the investment of additional judicial resources. Nor is there a substantial comity concern raised by this Court's application of state law with which courts in this District are eminently familiar, and which is applied by those courts every day. The Court therefore finds that the *Cohill* factors weigh in favor of supplemental jurisdiction over Henry's NYSHRL claims. And, because Henry's state-law claims are coterminous both legally and factually with her federal claims, her state-law claims, too, are dismissed.

■ However, no circumstances counsel in favor of the Court's exercising supplemental jurisdiction over Henry's city-law discrimination and retaliation claims. The Court has not invested the resources necessary to resolve these non-federal claims, nor do convenience, fairness, and comity require the Court to exercise sup-

plemental jurisdiction. As noted, the standard of liability is materially different under the NYCHRL from that under Title VII and the NYSHRL; thus, the Court has not invested the judicial resources necessary to resolve those claims. Moreover, dismissing the city-law claims now, at the motion to dismiss stage, would not cause substantial delay, because the parties have not yet engaged in discovery. The Court accordingly declines to exercise supplemental jurisdiction over the NYCHRL claims. These claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Henry's Title VII, § 1981, and NYSHRL claims is granted, and the Court declines to exercise supplemental jurisdiction over Henry's NYCHRL claims. The Clerk of Court is respectfully directed to terminate the motions pending at Dkt. 7 and 11, and to close this case.

SO ORDERED.